E. H. Bess v. Citizens Telephone Company and Southwestern Bell Telephone Company, Appellants.

Division One, October 11, 1926.

**1. TELEPHONE COMPANY: Nature of Service: Written Message.** The nature of service ordinarily rendered by a telephone company is communication of conversation between persons over its wires. The telephone instrument and wires are placed in possession of a patron to be operated by him while the communication is being transmitted. Ordinarily the message is not placed in possession of the carrier to be transmitted in its own way, and unless it holds itself out as a transmitter of written messages it is not under the same obligations and subject to the same liabilities as a telegraph company for failure to transmit written messages.

**2. ———: ———: Prior Refusal to Permit Use.** The fact that plaintiff had previously been refused permission to talk over a long-distance telephone, is not proof that it was the rule or custom of the company to receive, transmit and deliver written messages, or that the company held itself out as engaged in rendering such service.

**3. ———: ———: Limitation: Rules.** A telephone company has a right to make rules and regulations relating to the conduct of its business which are not in conflict with a duty or liability imposed by law; and where the rules and regulations filed by it with the Public Service Commission declare that its "toll service consists of the use of facilities for telephone communication between different exchange areas" and that it "does not transmit messages," there must be proof, by a patron who sues for its refusal to transmit his written message, that it customarily received, transmitted and delivered written messages, or that a valid statute imposed upon it the duty to render such service.

**4. ———: ———: Penal Statute.** Section 10136, Revised Statutes 1919, is a penal statute, is merely declaratory of the common law, does not undertake to define the telephone business, and does not impose on telephone companies the duty to receive, transmit and deliver written messages, and the penalties by it provided are applicable only when it appears that the company does in fact undertake, or holds itself forth as undertaking, to transmit written messages.

**5. ———: Refusal to Transmit Written Message: Recovery of Statutory Penalty.** A plaintiff who tenders a written message for long-distance transmission, to a telephone company, whose business consists in furnishing facilities for communication of conversations between persons and whose rules declare that it does not transmit messages, and which does not undertake, or hold itself out as undertaking, to transmit written messages, cannot recover the penalty provided by the statute (Sec. 10136, R. S. 1919) for its refusal to accept his message for transmission. That statute does not apply to such a telephone company.

Corpus Juris-Cyc. References: Constitutional Law, 12 C. J., Section 220, p. 787, n. 96. Telegraphs and Telephones, 37 Cyc., p. 1610, n. 52, 57; p. 1619, n. 48; p. 1629, n. 61; p. 1650, n. 64, 65; p. 1651, n. 66; p. 1666, n. 20; p. 1670, n. 59; p. 1701, n. 55, 56; p. 1702, n. 60, 64; p. 1703, n. 69, 70, 71, 72, 73, 74, 75, 78; p. 1704, n. 98 New; p. 1740, n. 26.

Appeal from Madison Circuit Court.—*Hon. Peter H. Huck,* Judge.

REVERSED.

*E. D. Anthony, Thos. O. Stokes, Earl H. Painter* and *Geo. B. Whissell* for appellants; *J. W. Jamison* of counsel.

(1) Sec. 10136, R. S. 1919, is merely declaratory of the common law and does not impose any new duties on the appellants. Therefore, the court erred in holding that Section 10136 imposed upon the appellants the duty of engaging in the business of accepting and transmitting written dispatches. Home Tel. Co. v. Granby & Neosho Tel. Co., 147 Mo. App. 231. (2) Sec. 10136 is a penal statute and must be strictly construed. Respondent in order to recover must bring himself clearly within its terms and provisions, and the appellants must be brought strictly within the terms prescribed, for a violation of which the penalty is imposed. Where there is a doubt, the statute ought not to be construed to inflict a penalty. Connell v. Western Union Tel. Co., 108 Mo. 459; Bradshaw v. Western Union Tel. Co., 150 Mo. App. 711; Adcox v. Tel. Co., 171 Mo. App. 331; Taylor v. Western Union Tel. Co., 181 Mo. App. 288; Pollard v. Mo. & Kas. Tel. Co., 114 Mo. App. 533; Brockman Comm. Co. v. Western Union Tel. Co., 180 Mo. App. 631; Nasep v. Western Union Tel. Co., 184 Mo. App. 144; Dudley v. Western Union Tel. Co., 54 Mo. App. 394; Wood v. Western Union Tel. Co., 59 Mo. App. 238. (3) Section 10136 provides that dispatches must be received only "on payment or tender of their usual charges for transmitting and delivering dispatches as established by the rules and regulations of such telephone or telegraph lines." Therefore, in order to recover a penalty under this statute, respondent must allege and prove: (a) That the appellants have rules and regulations covering the transmitting and delivering of dispatches, that is, written messages. Cases supra. (b) That the appellants have rates (or charges) on file with the Public Service Commission covering the transmitting and delivering of dispatches, that is, written messages. Secs. 10136, 10496, 10497, 10502, R. S. 1919; cases supra. (4) The courts will take judicial notice of the essential differences between the telephone and telegraph businesses and will take judicial notice of the fact that the telephone business is the business of furnishing for hire facilities whereby people may talk to one another at distances; whereas, the telegraph business is the business of receiving written messages (dispatches) for transmission and delivery. The courts will also take judicial notice of the fact that in the telephone business the patron does his own transmitting; whereas, in the telegraph business the telegraph company's employees do the transmitting. Home Tel. Co. v. Granby & Neosho Tel. Co., 147 Mo. App. 235; Meeker v. Union E. L. & P. Co., 279 Mo. 574; Wolfe v. Mo. Pac. Ry. Co., 97 Mo. 473;

315 Mo.—67.

Globe Printing Co. v. Stahl, 23 Mo. App. 458; Union Const. Co. v. Western Union Tel. Co., 125 Pac. (Cal.) 242; Southern Tel. Co. v. King, 146 S. W. 490; Jones v. Cumberland Tel. & Tel. Co., 130 S. W. (Ky.) 995; Gainesboro Tel. Co. v. Buckner, 169 S. W. (Ky.) 1000; Southwestern Bell Tel. Co. v. Flood, 111 S. W. 1064, 51 Tex. Civ. App. 340; Gilpin v. Savage, 60 Misc. 605, 112 N. Y. Supp. 802; R. S. 1919, sec. 10411, subsecs. 17-20. (5) The court erred in holding that Section 10136 was not unconstitutional, null and void as applied to telephone companies not engaged in the business of transmitting and delivering dispatches, and in holding that this statute as applied to such telephone companies was not contrary to and in violation of the Fourteenth Amendment to the Constitution of the United States and Sec. 30, Art. II, Missouri Constitution. Okla. Natural Gas Co. v. Corp. Comm., P. U. R. 1923-B, 836, 211 Pac. 401; Michigan Pub. Util. Com. v. Duke, U. S. Adv. Op. 207, Jan. 12, 1925; Producers' Transportation Co. v. Railroad Commission, 251 U. S. 228, 64 L. Ed. 242; Clear Creek Oil & Gas Co. v. Ft. Smith Spelter Co., 230 S. W. (Ark.) 897.

*Davis & Damron* for respondent.

(1) It is the duty of every telephone company in this State to receive messages or dispatches from or for any individual and on payment or tender of their usual charges for transmitting such messages or dispatches, to transmit and deliver same to designated address, and to use due diligence to place said message or dispatch in the hands of the addressee promptly. Sec. 10136, R. S. 1919; Pollard v. Mo. & Kan. Tel. Co., 114 Mo. App. 538. Telephone companies are common carriers in the sense that they are bound to furnish service to any one offering to comply with their reasonable requirements. They are regarded by the courts as performing functions similar to railways and express companies which conduct a general carrying business and are subject to governmental regulations and judicial decisions. State ex rel. Payne v. Kinlock Tel. Co., 93 Mo. App. 349. (2) Section 10550 does not repeal, but is supplemental to, Section 10136. Boone County Home Mut. Ins. Co. v. Anthony, 68 Mo. App. 428; State ex rel. v. St. Joseph Convent of Mercy, 116 Mo. 575; State ex rel. Gorden v. Hopkins, 87 Mo. 519; State ex rel. Sturgeon v. Bishop, 195 Mo. App. 30. (3) Section 10136 is not in conflict with the Fourteenth Amendment to U. S. Constitution, or with Section 30, Article 2, Constitution of Missouri. The State has the right to impose upon telephone companies such regulations and duties as will compel them to give reasonable and adequate service to their patrons. Hall v. DeCuir, 95 U. S. 485; Plessy v. Ferguson, 163 U. S. 537; Minneapolis Ry. Co. v. Minnesota, 193 U. S. 53; State v. Whittaker, 160 Mo. 59. (a) Corporations are not citizens within

the meaning of that clause of the Fourteenth Amendment, prohibiting States from abridging the privileges and immunities of citizens of the United States. Western Turf Assn. v. Greenberg, 204 U. S. 359. States providing for the organization of corporations may determine their duties, right and privileges. Berea College v. Kentucky, 211 U. S. 45. (b) Corporations may be governed by laws that do not apply to or affect the rights of individuals. Hammond Packing Co. v. Arkansas, 212 U. S. 322; St. Louis Ry. Co. v. Matthews, 165 U. S. 1; Chicago & Alton Ry. Co. v. Tranbarger, 238 U. S. 67. (c) Due process of law as used in the Federal and State constitutions means that there will be a regular course of proceeding, and that the party to be affected will be accorded an opportunity to contest the propriety of each step in the action to be taken against him. Simon v. Craft, 182 U. S. 427; Minneapolis Ry. Co. v. Minnesota, 193 U. S. 53; Chicago v. Sturges, 222 U. S. 313; Atlantic Coast Line Co. v. Riverside Mills, 219 U. S. 86; St. Louis v. Mo. Pac. Ry. Co., 211 S. W. 671; State v. Whittaker, 160 Mo. 59. (4) The rule that penal statutes must be strictly construed, means that the court must not bring cases within the statute not clearly embraced in it; nor by a narrow or forced construction of words exclude cases obviously within its provisions, the duty of the court being to follow the intention of the Legislature. Abbott v. Western Union Tel. Co., 210 S. W. 769; Grier v. Ry. Co., 286 Mo. 523. Nor does the term "strict construction" mean that the terms of the statute shall be unreasonably interpreted. Moore v. Western Union Tel. Co., 164 Mo. App. 165.

ATWOOD, J.—This is a proceeding to recover a penalty under Section 10136, Revised Statutes 1919. The plaintiff was E. H. Bess, and the defendants were Citizens Telephone Company, a corporation, and the Southwestern Bell Telephone Company, a corporation. From a judgment of nine hundred dollars in favor of plaintiff, the defendants prosecute separate appeals. The first count of the petition, omitting formal parts, is as follows:

"For his cause of action against the defendants, the plaintiff states and avers that on the third day of February, 1922, he tendered to defendants, at their said office in Fredericktown, Missouri, for transmission over said telephone lines from Fredericktown, Missouri, to St. Louis, Missouri, the following written message or dispatch, to-wit:

"'Fredericktown, Mo. 2-3-1922.
"'Frank K. Ashly,
c/o Maryland Hotel,
St. Louis, Mo.
"'I am arranging with Chas. Dover to protect the New Madrid County Land. I will write you fully concerning this matter.
"E. H. BESS.'"

"And thereupon, and at the same time tendered to and offered to pay to defendants the sum of seventy-five cents, the same being their

usual fees, tolls and charges for the transmission and delivery of such message or dispatch from said city of Fredericktown to St. Louis, Missouri, as established by the rules and regulations of defendant, and then and there demanded of defendants that they transmit and deliver said message or dispatch to St. Louis, Missouri, to the designated address therein and to place the same in the hands of Frank K. Ashly, the addressee therein.

"Plaintiff further states that it thereupon became the duty of defendants to receive and accept said message or dispatch and said money, and to transmit said message or dispatch over their said lines to said designated address, and to use due diligence to place the same in the hands of the said Frank K. Ashly, at said point, promptly and with impartiality and in good faith as required by them, by Section 10136 of the Revised Statutes of Missouri of 1919.

"That notwithstanding their duties as aforesaid and in direct violation thereof, the defendants wrongfully refused to accept or receive the amount of money so tendered and offered by plaintiff or any sum of money whatsoever from him for such service, and wrongfully refused to accept, transmit or deliver said message or dispatch to said designated address as demanded by plaintiff, and informed plaintiff at the time that they would not accept said money, or any sum of money from plaintiff, and would not accept, transmit or deliver said message or dispatch or any other message or dispatch for him for any sum of money whatever.

"Wherefore plaintiff prays judgment against the defendants on this count of his petition for the penalty and sum of three hundred dollars, as is awarded to him under and by the provisions of Section 10136, Revised Statutes of Missouri of 1919, for the wrongful conduct and failure of defendants, and for his costs in this behalf expended."

The remaining two counts of the petition were in all respects the same as the first count except a different written message is incorporated in each.

The defendants filed separate answers consisting of (a) general denials; (b) pleas that Section 10136, Revised Statutes 1919, is unconstitutional as applied to telephone companies, in that it deprives defendants of their property without due process of law and denies them equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States, and Section 30 of Article 2 of the Missouri Constitution; (c) pleas that Section 10136, Revised Statutes 1919, does not impose the duty upon defendants of engaging in the business of accepting, transmitting and delivering written or oral messages, and if said section is so construed then it is unconstitutional for the reasons above stated; (d) pleas that defendants are not now and never have been engaged in the business of transmitting and delivering messages of any kind, either oral or

written, their business being solely that of telephone companies; (e) pleas that defendants have not now and never have had any schedule of rates or charges or any rules or regulations relating to the acceptance and transmission of written messages or dispatches. The Bell Company also sets out in its answer its rule and regulation No. XX duly filed with the Public Service Commission of Missouri, which specifically provides that the Bell Company does not transmit messages, but offers the use of its facilities when available. The Bell Company also, in the last paragraph of its answer, renewed its general demurrer to plaintiff's petition on the ground that the petition did not state a cause of action. Other defenses pleaded by the Citizens Company are not urged on this appeal.

Plaintiff's replies denied "each and every allegation of new matter and things set forth and contained" in each of said answers. The evidence adduced by plaintiff tended to show that on February 3, 1922, the defendants maintained an office in Fredericktown which was in charge of Ora Tomlinson; that having been refused permission to talk over the long distance lines from his office in Fredericktown on said date plaintiff went to defendants' office to send the three messages set out in his petition and told Miss Tomlinson he would "like to talk to the parties;" that she told him that E. D. Anthony, manager of defendant Citizens Company, had instructed her not to allow him to use the long distance telephone; that he thereupon handed her the written messages and asked her if she would send them for him; that he offered to pay for sending the messages, but that Miss Tomlinson replied that she could not send them because of Mr. Anthony's instructions; that E. D. Anthony was manager of the Citizens Company and in charge of the receiving and sending exchange of the Bell Company; that plaintiff had used the telephone for eighteen years and had never tried to send any written messages before; and he did not inquire whether there was any rate for written messages; that he did not know that there was any difference between the rate for written and oral messages and tendered only the rate for oral messages; that the Bell line was connected with the Citizens line at Fredericktown, and that defendants did sometimes transmit oral messages for their patrons.

At the close of plaintiff's evidence defendant Bell Company requested the court to give a declaration of law in the nature of a demurrer to the evidence, which request was refused, and defendants thereupon introduced evidence tending to show that on February 3, 1922, plaintiff asked Ora Tomlinson, the operator then in charge of the telephone exchange of defendant Citizens Company to "put through three messages for him;" that he had them typewritten; that she told him she would have to refuse him unless he would let her call the manager Mr. Anthony; that plaintiff replied, "No, there is no use to call Mr. Anthony;" that he didn't give her any money

or ask her what the charges were, but said: "I have the money to put the calls through;" that it was her impression that plaintiff wished to do the talking himself and when she told him that she could not put the messages through without calling up the manager and getting his permission, plaintiff took his messages and left the office.

P. R. Ridgley, connecting company agent for defendant Bell Company, testified that he had been in the employ of the telephone company for nineteen years and that defendant Citizens Company is in his territory as connecting agent for the Bell Company. This witness further testified, over the objection and exception of plaintiff, that "the telephone business is providing means or facilities to permit or enable patrons to talk to each other at distances;" that the telephone business does not include the transmission of messages, either oral or written; that the telephone company merely is engaged in the business of furnishing facilities whereby its patrons may talk to one another; that in the telephone business the company's employees merely put up the connection so that two or more persons may talk to each other, whereas, in a telegraph business the company's employees actually receive the message from the patron and transmit it themselves to the sendee; and that the telephone companies are not equipped to transmit messages, either oral or written. He also testified that the rate schedules of defendant Bell Company on file with the Public Service Commission of Missouri on February 3, 1922, for toll service between Fredericktown and Sikeston, St. Louis and New Madrid show no rate on file for the transmission of a message, either oral or written. Witnesses also identified defendant's Exhibit 1 which was a certified copy of said rules and regulations on file with the Public Service Commission of Missouri. It was admitted in evidence over plaintiff's objection and exception.

At the close of the case each of the defendants offered a declaration of law in the nature of a demurrer to the evidence, and defendant Citizens Company offered the following declaration of law:

"The court declares and finds that the plaintiff cannot recover in this action.

"First. Because Section 10136, on which this action is based, is unconstitutional and void and is in conflict with and in contravention of Section 30 of Article II of the Constitution of the State of Missouri, and deprives the defendant of property without due process of law, and is criminal and imposes a penalty in the nature of a fine.

"Second. That Section 10136 is unconstitutional and void, in that it provides a penalty without a hearing as to damages sustained and takes property without compensation and without the consent of the defendant and is in violation of Section 20 of Article II of the Constitution of the State of Missouri.

"Third. That Section 10136 violates and is in conflict with Section 1 of Article XIV of the Constitution of the United States, and said Section 10136 is unconstitutional, void and unreasonable and in conflict with and contravenes Section 1 of Article XIV (known as the Fourteenth Amendment) of the Constitution of the United States, and deprives defendant of its property without due process of law, and denies to defendant the equal protection of the law.

"Fourth. That said Section 10136 is unconstitutional and void and is in conflict with Section 28 of Article IV of the Constitution of the State of Missouri, and that the title to said Section 10136 has more than one subject.

"Fifth. That telephone corporations are not subject to Section 10136; that said section applies only to telegraph companies.

"Sixth. That under the evidence and law plaintiff cannot recover. That the only right of action that plaintiff has is to sue and recover actual damages.

"Seventh. That plaintiff's petition does not state facts sufficient to recover and does not state a cause of action."

All of the aforesaid declarations of law were refused by the court, and the case having been heard without a jury judgment was entered for plaintiff on each of the three counts of the petition in sum of $300, or a total judgment of $900.

I.   This action proceeds upon the theory that it was the duty of defendants to receive, transmit and deliver written messages for hire. In Pollard v. Mo. & Kan. Tel. Co., 114 Mo. App. 533, the Kansas City Court of Appeals properly held that Section 1255, Revised Statutes 1899, now Section 10136, Revised Statutes 1919, **Nature of** is a penal statute to be strictly construed, and plaintiff's **Business.** allegation that he "demanded of defendant's agent that he be placed in communication with said Pratt over defendant's telephone system," failed to charge anything required of defendant by the statute which only imposed the duty to provide facilities at its office for the conduct of business with the public, and to receive and promptly transmit dispatches from and for other telephone lines, and from and for any individual, under a penalty for failing to do so. In the instant case plaintiff has, in substance, adopted the language of the statute and charged a refusal on the part of defendants to accept, transmit and deliver certain written messages for hire.

In 37 Cyc. 1701, it is said that "ordinarily it is not the duty of a telephone company, although conducting a long-distance business, to transmit messages, but merely to furnish a means of communication and to find and notify persons for whom calls are made." The rule is stated on the authority of Southwestern Telegraph & Telephone Co. v. Gotcher (Sup. Ct. of Texas), 53 S. W. 686, where it appeared

that the company only undertook to bring a person at one point on its line to its office in order that one at another point desiring to talk with him may do so, and by its rules and course of business, it refused to undertake the transmission of messages and forbade its servants to perform such services. In 37 Cyc. 1702, it is also said: "If, however, a telephone company undertakes to transmit and deliver messages, its duties and liabilities in this regard are similar to those of telegraph companies." The authority cited is Cumberland Telephone & Telegraph Co. v. Atherton (Ky. Ct. of App.), 91 S. W. 257, in which it appears that the telephone company's agent accepted the written message and agreed with the sender to transmit and deliver it for two dollars, which amount the sender paid.

In 26 Ruling Case Law, 480, it is said that "the method of carrying on the business of telephoning is dissimilar in many respects to the telegraph business, particularly in the method of transmission, and it has been said that a telephone company does not receive a message, nor does it transmit and deliver it in the ordinary acceptation of these words. It merely furnishes to the patron facilities for carrying on a conversation at long distance." The authority cited is Southern Tel. Co. v. King, 103 Ark. 160, 146 S. W. 489.

In Jones on Telegraph & Telephone Companies, 437, the rule is thus stated: "It is not the duty of telephone companies to deliver messages; but, where the agent of the company has the apparent authority to receive messages for transmission and delivery, the company will be liable for damages in the negligent performance of the undertaking." In many cases telephone companies contract to send messages in the nature of telegrams, and when such is the case, they are under the same obligations and subject to the same liabilities as telegraph companies, and are bound by the same rules. [Cumberland Tel. Co. v. Atherton, 91 S. W. 257, supra.] In Jones v. Cumberland Telephone & Telegraph Co., 130 S. W. l. c. 995, the court in speaking of telephone service said: "It is a common carrier of intelligence, engaged in a public service, holding itself out to the public, in consideration of certain fees exacted, as able, ready, and willing to enter into contracts that will place persons in direct communication with each other, and enable them to talk one to the other. It may hold itself out as willing to render other services, such as the transmission of messages, and, if so, its duty and liability would be measured by the same standard as that applied here." The nature of the telephone service ordinarily rendered is thus admirably stated in Telephone Co. v. Telephone Co., 147 Mo. App. l. c. 235: "The act of telephoning is the act of holding a conversation with another over the wires of the telephone company. The conversation, instead of being delivered to the agency of the telephone company, as are the goods to the agents of the railroad or the dispatch to the agent of

the telegraph company for transmission, is transmitted by the patron of the telephone himself, by means of electrical undulations which reproduce at the farther end of the line the pulsations set in motion by the first speaker. The act of transmission is instantaneous and self-executing. Instead of placing the message in the possession of the carrier for transmission in his own way, while operating his own instrumentalities, the telephone instrument and line are placed in possession of the patron to be operated by him while the communication is being had.''

II. As we read the record in this case it is devoid of any showing that it was a rule or custom of either defendant company to receive, transmit and deliver written messages, nor does it appear that either company ever held itself out as rendering such service. Telephone companies have a right to make reasonable rules and regulations in regard to the conduct of their business, not in conflict with any duty or liability imposed by law. [37 Cyc. 1619.] Rule XX of defendant Southwestern Bell Telephone Company, shown in defendants' ''Exhibit 1,'' which was a duly certified copy of its rules and regulations on file, as required by statute, with the Public Service Commission of Missouri is as follows:

**Proof of Rules and Custom.**

''Toll service consists of the use of the Telephone Company's facilities for telephone communication between different exchange areas. The company does not transmit messages, but offers the use of its facilities when available, and, therefore, is not liable for errors in transmission or for the failure to establish connections.''

Respondent claims that the following extract from the record constitutes an admission, binding on defendants in this case, that it was appellants' duty to receive, transmit and deliver respondent's written messages:

''Q. Miss Tomlinson, I'll ask you if you don't know that Mr. Bess had on different occasions called from his office and long-distance service had been refused him?

''MR. ANTHONY: I object to that, the court please, as incompetent. It has no tendency to prove that she refused this time.

''MR. DAVIS: It does have a tendency to prove that he was driven to the necessity of writing these messages out and taking them to the telephone office.

''THE COURT: I think Mr. Bess testified that he had been refused previously. I don't think it tends to prove that she refused to send the messages on this particular occasion.

''MR. DAMERON: That testimony is admissible and valuable for this purpose. The defendants have tried to show, at least by inference,

that if Mr. Anthony had been called at that time those messages would have gone through.

"MR. ANTHONY: No question about that."

In her previous examination this witness had several times referred to these messages as "calls" and in response to the question, "Did he want to talk himself, or have you send the written message and deliver it?" she said: "I was under the impression he wished to do the talking himself." The above extract upon which the respondent relies shows that the inquiry under discussion was as to whether or not respondent had been refused the right to talk over the long distance telephone. In Campbellsville Telephone & Telegraph Co. v. Lebanon, L. & L. Tel. Co. (Ct. of App. of Ky.), 80 S. W. 1. c. 1116, the court said that "sending a telephone message means usually that the persons in communication be afforded the means of talking to each other." This witness was subsequently recalled for further cross-examination by plaintiff's counsel and she was asked: "Now, Miss Tomlinson, in the long-distance service that you have conducted, do you ever transmit messages for patrons?" Her reply was: "I have never delivered a written message. Where a party cannot hear over the phone and repeats their message to me, I repeat it after them." This remark of defendants' counsel evidently referred to messages or calls in the ordinarily accepted meaning of being afforded the service of talking over the telephone, and it should not be construed contrary to the user's apparent intention and at variance with the facts disclosed by the whole record.

III. However, respondent insists that Section 10136, Revised Statutes 1919, makes it the duty of telephone companies to receive, transmit and deliver telephone messages. The section reads as follows:

"It shall be the duty of every telegraph or telephone company, incorporated or unincorporated, operating any telephone or telegraph line in this State, to provide sufficient facilities at all its offices for the dispatch of the business of the public, to receive dispatches from and for other telephone or telegraph lines and from or for any individual, and on payment or tender of their usual charges for transmitting and delivering dispatches as established by the rules and regulations of such telephone or telegraph lines, to transmit and deliver the same to designated address and to use due diligence to place said dispatch in the hands of the addressee, by the most direct means available, without material alterations, promptly, and with impartiality and good faith under a penalty of three hundred dollars for every neglect or refusal so to transmit and deliver, to be recovered with costs of suit by civil action by the person or persons or company sending or desiring to send such dispatch; two-thirds of the amount recovered to be retained by the plaintiff and one-third to be paid into the county school fund of the county in which the

suit was instituted, and the burden of proof shall be upon the company to show that the wire was engaged as the reason for the delay in transmitting such dispatch.''

This is plainly a penal statute. In 37 Cyc. 1703, it is said: ''It is ordinarily held that the remedy provided by such statutes is merely cumulative, and that the penalty is not in the nature of liquidated damages, but rather in the nature of a punishment for breach of a public duty, and that a recovery of the penalty is not a bar to an action for damages. It is not necessary, in order to recover the penalty, that plaintiff should have sustained any actual damages, nor is his object in sending the message material, provided the message was of a character proper for transmission.'' The duties enjoined by this statute are such as the common law, independent of any statute, require of all who hold themselves forth as performing that particular service. The statute is merely declaratory of the common law obligations. [Telephone Co. v. Telephone Co., 147 Mo. App. 1. c. 231; DeRutte v. N. Y., Albany & Buffalo Tel. Co., 1 Daly, 1. c. 558 (N. Y. Com. Pleas Rep.).] The telephone business is a business impressed with a public use, and insofar as it undertakes to render service, the property used and useful therein is dedicated to a public use. All persons who engage in the business are under the common-law obligations declared in this statute to transact the business with accuracy, promptness and impartiality, but they can be penalized thereunder only when brought strictly within the terms and penalties therein provided. This statute does not undertake to define the telephone business, but, as we have heretofore shown, courts have had occasion to do so. The telephone business does not ordinarily include the acceptance, transmission and delivery of written messages, but some who are engaged in the telephone business do undertake to render and hold themselves out as rendering this service, and whenever they do they owe the common-law duties incident thereto, and are liable in statutory penalties for their failure to discharge such duties. But, to hold that penal statutes which are merely declaratory of common-law obligations, are to be construed as imposing a new service upon a business which the person engaged therein expressly declines to undertake and has never held himself forth as undertaking, would not only be subversive of the sound reasoning which supports public service obligations, but it would strain the statute far beyond its proper constitutional scope. It is not the policy of the law to hold a statute unconstitutional when it can be construed otherwise.

Upon the reasoning above indicated, we hold that Section 10136, Revised Statutes 1919, does not impose on telephone companies the duty of receiving, transmitting and delivering written messages, and the penalties therein provided are applicable only when it appears

that the telephone company charged with offending does in fact undertake, or hold itself forth as undertaking, to render this particular service. Such proof not appearing in the record before us, the judgment of the trial court is reversed.

*Ragland* and *Otto, JJ.,* concur; *Graves J.,* absent.