184 N.J. Super. 504 (1982)
446 A.2d 578
PUBLIC SERVICE ELECTRIC & GAS COMPANY, PLAINTIFF,
v.
LYNN T. STONE AND MICHAEL W. STONE, DEFENDANTS.
Superior Court of New Jersey, District Court Camden County.
March 17, 1982.
*505 William R. Powers, Jr. for plaintiff Moss, Powell & Powers, attorneys).
Gary C. Chiumento for defendants (Parker, McKay & Criscuolo, attorneys).
PALESE, J.S.C.
On February 5, 1979 a vehicle owned by defendants Lynn T. Stone and Michael W. Stone and operated by defendant Michael W. Stone struck a public utility pole in Cherry Hill, New Jersey. The pole was replaced by Public Service Electric and Gas Company. Plaintiff seeks to recover from defendants the costs expended to replace the pole in the sum of $936.18. Defendants' negligence was stipulated, leaving as the only issue the question of damages.
The trial judge, sitting with a jury, directed a verdict in the sum of $936.18, plus costs, at the conclusion of all of the testimony, having determined as a matter of law that overhead expenses were properly included as an element of reimbursement, no competent testimony having been presented by defendants raising a question of fact.
Plaintiff contended that both direct and indirect costs, including overhead, were proper elements of damage to be submitted to the jury, provided generally acceptable accounting standards were followed. Defendants urged that indirect and overhead expenses were not proper elements of damages in this factual situation, being too remote and speculative and, further, that there was an obligation on the part of plaintiff to prove that *506 these elements of damages were proximately caused by the negligence of defendants.
The issue thus presented is what elements were properly included in establishing the standards to determine the reasonable value of damages to the personal property of a public utility when the public utility has replaced its own damaged property. This issue is novel in New Jersey; the only prior case, New Jersey Power & Light Co. v. Mabee, 41 N.J. 439 (1964), determined that depreciation is not to be taken into consideration as an element in determining damages to a public utility.
William F. Dolan, Jr., a registered accountant of the State of New Jersey, an employee of plaintiff for 25 years and presently the assistant Comptroller, testified that acceptable accounting standards were utilized in determining these costs. Martin Corcoran, a senior accountant with 29 years of service to plaintiff and presently supervisor of construction billings, gave testimony providing the basis for determining the productive, nonproductive, fringe benefit, overhead, pole costs and storage expenses of the pole, which determined the damages to be $936.18 in this case.
Defendant made an offer of proof through Joseph Wilshire, Manager of Accounting Services for Atlantic City Electric Company, whose testimony would have indicated that the cost to Atlantic City Electric Company was much less than that of plaintiff. Upon conclusion of the Evid.R. 8 hearing the court determined that Wilshire was unable to establish a proper foundation to be able to compare the costs of Atlantic City Electric Company to replace a pole. Thus the court would not permit the testimony to be given. There was no other testimony presented on behalf of defendant.
Overhead is defined as follows in Black's Law Dictionary, (5 ed. 1968), at 995:
All administrative or executive qualities incident to the management, supervision or conduct of the capital outlay or business; distinguished from `operating charges' or those items that are not specifically connected with the production and may be seen as the work progresses and are the subject of knowledge from observation.
*507 Overhead is also defined in Words & Phrases, "Overhead," as follows:
As applied to a public service corporation, includes the expenses that would necessarily be incurred in the reproduction of property. The legal expenses of organization and expenses, for office, engineering, inspection, supervision and management during construction has always been defined as the necessary costs incurred by a company in its operations which cannot be easily identified with any individual product and which, by accepted cost accounting procedures, is spread over or allocated to the productive labor which is labor performed in the processing of a company's product.
In its request for reimbursement plaintiff established overhead costs of $37.1785 an hour, this rate being imposed on 14.20 productive hours for a total overhead cost of $527.93. It is obvious that the overhead cost is a rather substantial portion of a billing of $936.18.[1]

 HOURS RATES EXTENSIONS TOTAL
TROUBLESHOOTER 2.70 11.4215 30.84 30.84
LABOR - REPLACING POLE
 (Productive Time) 10.33 28.91
 (Non-Productive Time) 8.07 22.58
 _____ _____
 Total 2.80 18.40[*] 51.49 51.49
LABOR - TRANSFER CONSTRUCTION
 AND OTHER LINE
 CONSTRUCTION GROUP 8.70 18.3910[*] 160.00 160.00
 (Productive &
 Non-Productive)
 DIRECT PAYROLL
 SUPPORT
 PENSIONS 13.5312
 INSURANCE 5.5966
 PAYROLL TAXES 6.2335
 INJURIES AND
 DAMAGES 0.0910
 OTHER BENEFITS 2.1173
 ______
 LABOR DOLLARS
 @ 242.34 27.57 66.81 66.81
*508 INDIRECT COSTS
 TRUCKS, AUTO
 EQUIPMENT 9.6169
 SMALL TOOLS 0.9745
 LOCAL SUPVR. &
 ENGR. 15.5753
 CLERICAL & MISC. 4.3573
 LOCAL ADMIN.
 EXP. 2.2628
 GEN'L OFFICE
 SUPV. & ENGR. 4.3917
 _______
 14.20 37.1785 527.93 527.93
MATERIAL - POLE 75.289 75.28
 STORES OVERHEAD 31.6570% 23.83 99.11
 _______
 $936.18

There is general agreement in most jurisdictions that elements such as job site, productive and nonproductive time, direct payroll support obligations, also known as fringe benefits, and actual costs of the replacement pole are proper elements in determining damages. The elements of overhead and storage costs for the pole are sharply disputed.
*509 Jurisdictions supporting the inclusion of overhead expenses for utility pole replacement, provided generally accepted accounting standards were proven, are as follows:
New York State Electric & Gas Co. v. Fischer, 43 Misc.2d 178, 250 N.Y.S.2d 567 (Sup.Ct. 1964) aff'd 261 N.Y.S.2d 310, 24 A.D.2d 683 (App.Div. 1965), "extraordinary expenses," including store expenses and overhead, are recoverable since the accounting system used to calculate was accurate and realistic.
Ohio Power Co. v. Zemelka, 19 Ohio App.2d 213, 251 N.E.2d 2 (App.Ct. 1969), indirect costs, such as fringe, transportation, administration and engineering expenses, etc., were permitted on the basis that they were a result of the application of "sound accounting" principles.
Ohio Power Co. v. Johnston, 18 Ohio Misc. 55, 247 N.E.2d 338 (Com.Pl. 1968), overhead permitted since this cost would have been included in the contract cost had an outside company repaired the pole; therefore, these are recoverable. These were derived from "sound accounting" principles.
Wisconsin Telephone Co. v. Reynolds, 2 Wis.2d 649, 87 N.W.2d 285 (Sup.Ct. 1958), overhead and other related payments in regard to repair are recoverable where the form and method of calculation were within the guidelines of the F.C.C. and the Public Service Commission.
Hartford Electric Light Co. v. Beard, 3 Conn.Cir. 323, 213 A.2d 536 (Cir.Ct. 1965), "overhead" expenses were recoverable as part of the damages for destruction of a utility pole where these were shown with "reasonable certainty" and by "sound accounting" principles.
Curt's Trucking Co. v. City of Anchorage, 578 P.2d 975 (Alaska Sup.Ct. 1978), indirect expenses were recoverable where calculation was a fair and reasonable measure of actual costs and these measures were in accordance with "sound accounting" practices.
Younger v. Appalachian Power Co., 214 Va. 662, 202 S.E.2d 866 (App.Ct. 1974), overhead would have been reflected in an *510 independent contractor's bill for repair of the utility pole. Therefore, they are recoverable where the company does the repairs themselves as the natural and proximate result of the wrongful act.
Other cases not involving utilities have permitted inclusion of overhead and supervisory costs even though repairs or replacement were completed by the plaintiff. They are as follows:
Reliable Electric Co. v. Clinton Campbell Contractors, Inc., 10 Ariz. App. 371, 459 P.2d 98 (App.Ct. 1969). "A plaintiff may recover his overhead and supervisory costs notwithstanding that he makes the repairs himself." Overhead and supervisory costs were permitted since the methods used were well recognized in the brick industry.
Ford Motor Co. v. Bradley Transport Co., 174 F.2d 192 (6 Cir.1949). Overhead figure was permitted as it was the same figure that is applied to all of plaintiff's government contracts.
Boh Bros. Constr. Co., Inc. v. M/V Tag-Along, 569 F.2d 217 (5 Cir.1978) appeal after remand 577 F.2d 303 (5th Cir.1978), allowed overhead expenses and a fair rental value for the use of its internal equipment.
Freeport Sulphur Co. v. S/S Hermosa, 526 F.2d 300 (5 Cir.1976). The costs of repairs performed internally by the injured party, including overhead, are recoverable.
Jurisdictions denying overhead as part of damages because they were too remote and speculative and not the consequence of the defendant's tortious conduct are as follows:
Central Illinois Light Co. v. Stenzel, 44 Ill. App.2d 388, 195 N.E.2d 207 (App.Ct. 1963), denied "overhead" as part of the damages award as being "remote and speculative" and "not the natural consequence of defendant's tortious conduct."
Louisiana Power & Light Co. v. Smith, 343 So.2d 367 (La. App. Ct. 1977), denied "overhead" as part of the damages award; however, conceded that it would be recoverable where sufficiently supported by evidence and directly related to the particular pole replacement.
*511 Overhead and storage expenses would have been included in the contract cost, as well as profit, of any company whose services would have been utilized to replace the pole. The logic and reasoning of permitting testimony to be received of overhead and storage expenses, provided generally acceptable accounting standards have been established, is more persuasive than the findings of those jurisdictions wherein such testimony was not permitted as being too remote and speculative or was not the natural consequence of the defendant's tortious conduct.
This court finds that logic and reasoning, as well as acceptable accounting standards, make it necessary to admit testimony of overhead and storage expenses as a proper element of damages.
NOTES
[1] A recapitulation of the statement rendered is necessary to appreciate fully the costs and expenses involved.
[*] The rate of 18.3910 consists of the following productive time ($10.33) plus non-productive time ($8.07) as follows:
 Illness Time .66
 Holidays .76
 Vacation 1.41
 Training .25
 Inclement Weather 1.00
 Headquarters Time .96
 Travel Time 2.60
 Truck Breakdown .18
 Miscellaneous .25
 ____
 8.07