BOARD OF PUBLIC UTILITIES OF the
CITY OF SPRINGFIELD, Missouri,
and Southwestern Bell Telephone Com-
pany, Plaintiffs-Respondents,

v.

Sandra Kay FENTON,
Defendant-Appellant.

No. 12924.

Missouri Court of Appeals,
Southern District,
Division Two.

April 20, 1984.

David F. Sullivan, Jones, Keeter, Karchmer, Nelms, Sullivan & Kirby, Springfield, for defendant-appellant.

Rae L. Nickell, Springfield, for plaintiff-respondent Board of Public Utilities.

Richard E. Dorr, Dorr and Baird, Springfield, Deborah Sue Doud, Kansas City, Jack C. Lorenz, St. Louis, for plaintiff-respondent Southwestern Bell Telephone Company.

HOGAN, Judge.

On July 5, 1979, defendant Sandra Kay Fenton was driving west along the outer road south of Interstate 44, northeast of Springfield, Missouri. Defendant fell asleep and ran off the road on the right (north) side. She struck and broke a 40-foot wooden telephone pole which was the property of plaintiff Southwestern Bell. A transformer, described in the record only as a 10 KVA transformer, was attached to the pole. The transformer was the property of the plaintiff Board of Public Utilities. It was necessary to replace the pole and the transformer and to repair and reconnect one primary neutral service wire in order to restore telephone service to the Strafford, Missouri, area. The "Strafford community area," as the service area was described, lies northeast of Springfield.

Southwestern Bell replaced the telephone pole; its cost of replacement, including material, labor and overhead, was $522.60. The Board of Public Utilities replaced the transformer and repaired the primary service wire; its cost of repair and replacement, including material, labor and over-

head was $661.22. The defendant refused to pay either sum and both plaintiffs brought suit in the Associate Division of the Greene County Circuit Court.

In the trial court the actions were consolidated and tried without the aid of a jury. The court found in favor of plaintiff Board of Public Utilities and against the defendant in the amount of $661.22. It also found in favor of plaintiff Southwestern Bell and against the defendant in the amount of $522.60. The defendant appealed.

A threshold point to be addressed is defendant's contention that the trial court erred as a matter of law in denying her oral motion for a directed verdict made at the close of plaintiffs' case because there was no evidence "as to [the plaintiffs'] ... status and concomitant legal capacity to sue."

■ It may be observed that in this court-tried case, a motion for directed verdict, as such, is inappropriate. *Cave v. Cave*, 593 S.W.2d 592, 595 (Mo.App.1979); *Moser v. Williams*, 443 S.W.2d 212, 214–15[1, 2] (Mo.App.1969). We may regard the motion as a motion to dismiss, *Moser*, 443 S.W.2d at 215, and defendant's motion will be so taken here.

■ The principle which controls this assignment of error is that if a party elects to plead formally, he is bound by his pleadings to the same extent as if his case had originated in the circuit court rather than the associate division where, as provided by § 517.050, RSMo 1978, no formal pleadings are required. *Edwards v. Hrebec*, 414 S.W.2d 361, 366[11] (Mo.App.1967); *Tillery v. Crook*, 297 S.W.2d 9, 11 (Mo.App.1957); *Frye v. Baskin*, 241 Mo.App. 319, 332, 231 S.W.2d 630, 634–35[8] (1950); *Usona Mfg. Co. v. Shubert-Christy Corporation*, 132 S.W.2d 1101, 1103[1, 2] (Mo.App.1939).

■ We must take the record as it comes to us. *Hardin v. Ray*, 404 S.W.2d 764, 772 (Mo.App.1966). The legal file before this court shows that plaintiff Board of Public Utilities pled its existence as operator and manager of the public utilities of

the City of Springfield under the charter of that city; plaintiff Southwestern Bell Telephone pled its existence as a corporation authorized to furnish the local exchange of telephone services in Greene County. If the petitions are given fair intendment, each plaintiff pleaded its corporate existence as a public utility authorized to sue in the courts of this state.

■ The defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted. That motion raised no issue concerning the plaintiffs' existence as public utilities or their capacity to sue and be sued. Defendant's answers were general denials. The allegations of the petitions concerning plaintiffs' organization as public utilities and their capacity to sue were sufficient in the absence of some pleading contesting those allegations. The objection that the plaintiffs failed to prove their legal status and capacity to sue has been waived. *Executive Jet Management, Etc., v. Scott,* 629 S.W.2d 598, 611[33–35][36] (Mo.App.1981).

■ On the merits, the defendant has constructed an elaborate argument, based principally upon the court's holding in *Gulf, M. & O.R. Co. v. Smith-Brennan Pile Co.,* 223 S.W.2d 100 (Mo.App.1949), to the effect that the trial court applied an erroneous measure of damages in this case. Asserting that the usual measure of damages for injury to any sort of property is the difference in the fair market value of the property before and after it is damaged, defendant maintains the "depreciated value" standard rather than the "cost of repair" should have been applied here. We reject the argument that, as a matter of law, the depreciated value measure of damages applies to cases in which electric or telephone transmission equipment has been tortiously damaged. *City of Kennett v. Akers,* 564 S.W.2d 41 (Mo. banc 1978), involved damage tortiously done to the plaintiff's power and light system. The court, addressing the plaintiff's measure of damages, held, 564 S.W.2d at 50:

"Any reasonable expenses proximately resulting from damage to property are usually a proper element of recovery and such expenses are not to be classified as property loss or property damage. Plaintiff sought damages for items not susceptible to being measured by before and after value as required by MAI No. 4.02 nor by the reasonable cost of repair as per MAI No. 4.02 (Supp.1976). These items of damage include the cost of loading the transformer onto a lowboy for transportation to the repair site— $170.00, and the labor cost of moving the damaged transformer out and the repaired one into the substation—$475.80." (Citations omitted.)

The court went on to hold that the proper instruction for use was MAI 4.01, which permits recovery of such damages as will fairly and justly compensate the plaintiff for any damages sustained as a direct result of the tortious act sued upon.

We are nevertheless wary of drawing too many inferences from a single precedent, and if, as appears to be the case, the parties have chosen this appeal as a vehicle for a definitive ruling, they have chosen poorly. The case is little more than an action on account; the record is sufficient for resolution of the appeal, but it is wholly insufficient as a basis for any definitive ruling. What is more, and even assuming the cost of repair plus overhead directly attributable to the damage is the proper measure of damages, standard authorities show that special problems inhere in determining the value of public utility property, and in determining what overhead costs are recoverable when such property is tortiously damaged. D. Dobbs, Remedies, § 5.12, p. 392–96 (1973) [hereinafter Dobbs].

■ The defendant, on oral argument, indicated she believed depreciation of the telephone pole and the transformer should have been allowed. The only evidence in the record concerning depreciation of the transformer came from Mr. Cantrell, an electrical engineer employed by the plaintiff Board of Public Utilities. The substance of Cantrell's testimony was that a transformer of the sort involved here "will

last really kind of an indefinite period" if it is properly used. There was no evidence whatever concerning the age of the transformer which was replaced and as far as the record shows, there is no effective market for damaged transformers, nor any standard cost for repairs. Such being the case, we agree with Professor Dobbs that use of the replacement cost "seems fair enough." *Dobbs* at 394.

■ The cost of the replacement pole presents similar problems. Plaintiff Southwestern Bell had the testimony of Mr. Edwards, local assistant manager at Southwestern Bell for investment and cost. Edwards testified that individual poles are not valued as such, but as part of an entire system. The cost of a replacement pole is determined by ascertaining the purchase price with an addition or "loading" for storage. A pole is intended to last indefinitely, but for tax purposes the depreciable life of a pole is 30 years. However, as Professor Dobbs points out, individual poles may last much longer than the average life, or less. Southwestern Bell, but for defendant's negligence, might not have had to replace the pole, or because of technological changes, e.g., underground conduits, might never have replaced it at all. It is unnecessary to quote extensively from the case, but in the peculiar circumstances, the logic of *Horton v. Georgia Power Co.*, 149 Ga. App. 328, 254 S.E.2d 479, 481 (1979), is compelling. There, the Georgia court, citing *New Jersey Power & Light Co. v. Mabee*, 41 N.J. 439, 197 A.2d 194 (1964), among other precedents, held the necessary expense of restoring a damaged pole was the proper measure of damages for its wrongful destruction. The court held that the replacement of the broken pole with a new pole could not be said, with reasonable assurance, to do more than remedy the wrong done. The court also pointed out that the pole had no value of its own, but had value only as an integral part of a complete distribution system. *Horton, supra*, 254 S.E.2d at 481. We cannot say the trial court erred in allowing plaintiff Southwestern Bell to recover the replacement costs of the telephone pole, and like consid-

erations apply to the replacement of the transformer.

■ As to the overhead allowed, the *City of Kennett* case indicates to us that all direct costs attributable to the restoration of service are recoverable. Some "overhead" costs were allowed here, and we cannot say those costs were allowed improperly. Such allowance does not constitute an allowance of profit to the plaintiffs, as defendant suggests; it is almost certain that overhead expenses would have been included and charged to the defendant if the plaintiffs had employed an independent contractor to replace and repair the damaged part of the system. *Public Service Elec. & Gas Co. v. Stone*, 184 N.J.Super. 504, 446 A.2d 578 (1982). See *Dobbs* at 394–95 and n. 32. Further, we see no practicable way to calculate and distinguish that part of "overhead" costs attributable to a particular repair operation.

■ There is a further justification, in this case, for allowing the full cost of replacement. The impact of the collision broke the pole; evidence was received, without objection, that immediate replacement and repair were necessary because an unsafe condition had been created when the power or supply line was torn loose from the pole. Such evidence, though conclusional, has weight when it is received without objection. See *Turner v. Yellow Cab Company of Springfield*, 361 S.W.2d 149, 154–55 (Mo.App.1962). Additionally, it must be borne in mind that telephone companies are under a common-law duty, if no other, to transact their business with accuracy, promptness and impartiality and may, in some circumstances, be liable for failure to do so. See *Jennings v. Southwestern Bell Telephone Company*, 307 S.W.2d 464, 466–67 (Mo.1957); *Bess v. Citizens' Telephone Co.*, 315 Mo. 1056, 1067, 287 S.W. 466, 470[9] (1926). There is no showing that plaintiffs actually incurred any liability, but certainly because of defendant's negligence, they were exposed to an appreciable risk. Taking in consideration that the right of contribution between joint or

concurrent tort feasors—as an independent action—was a well-established right in this jurisdiction when this accident occurred, *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727 (Mo. banc 1982), the defendant or her insurer, if she has one, is in no position to complain because a common exposure to risk was eliminated as expeditiously as possible.

We have considered the other direct and tangential arguments advanced by the defendant. We find it unnecessary to discuss them. Repeating that we confine our decision to the facts of the case, we find substantial evidence to support the judgment; we find no erroneous declaration nor application of the law, and the record generates no firm belief that the judgment appealed from is wrong. Accordingly, the judgment is affirmed.

MAUS, P.J., and CROW, Alt. J., concur.

PREWITT, J., disqualified.