# MIDDLE TENNESSEE ELECTRIC MEMBERSHIP CORPORATION v. JAMES BARRETT, COCA-COLA BOTTLING WORKS, INC., and Ryder Truck Rental System, Inc. —410 S.W.(2d) 914.

Middle Section, October 28, 1966.

Certiorari Denied by Supreme Court, February 6, 1967.

662

Marshall E. Duggin, Woodbury, for Middle Tenn. Electric Membership Corporation.

Alfred T. Adams, Jr., of Glasgow & Adams, Nashville, Hoyt Bryson, of Bryson & Bryson, Woodbury, for James Barrett, Coca-Cola Bottling Works, Inc, and Ryder Truck Rental System, Inc.

PER CURIAM:

The principal question involved in this case is the proper measure of damages to a utility pole and other electrical transmission equipment owned by Middle Tennessee Electric Membership Corporation, which equipment was damaged as result of a collision of a truck with the utility pole. Since all of the parties appealed, we will refer to them here as plaintiff and defendants as they were designated in the trial Court.

On August 30, 1965, the defendant, James Barrett, while acting within the scope of his employment by the defendant, Coca-Cola Bottling Works, Inc., of Murfreesboro, Tennessee, drove and ran a certain truck into and against a utility pole owned by the plaintiff, Middle Tennessee Electric Membership Corporation, thereby breaking the pole and damaging some of the electrical transmission equipment affixed to it.

The truck was owned by the defendant, Ryder Truck Rental System, Inc., and, at the time of the accident, was leased to Coca-Cola Bottling Works, Inc. The damage to the pole and other equipment affixed thereto was imme-

diately repaired by the plaintiff, using its own employees and equipment to make such repairs.

This suit was originally filed by the plaintiff, Middle Tennessee Electric Membership Corporation, against all three defendants, James Barrett, Coca-Cola Bottling Works, Inc., and Ryder Truck Rental System, Inc., in General Sessions Court of Cannon County, which Court rendered judgment in favor of plaintiff, against all of the defendants, from which an appeal was prayed and perfected by all defendants to the Circuit Court of Cannon County.

On October 14, 1965, the case was tried before the Circuit Judge, Honorable John D. Wiseman, without the intervention of a jury.

At the trial, counsel for all of the parties stipulated that the defendant, Barrett, backed into or ran into the utility pole in question and damaged it to the extent it had to be replaced, and the issue of negligence was not controverted by defendants. The defendant, Ryder Truck Rental System, Inc., denied liability, upon the grounds that it was merely leasing the truck in question to Coca-Cola Bottling Works, Inc.

After taking the case under advisement, the trial Judge rendered judgment in favor of plaintiff and against all of the defendants for the total sum of $286.65 damages, and costs.

The specific elements of damage awarded are set forth separately in the trial Court's judgment as follows:

"The court, therefore, finds that the plaintiff is entitled to recover of the defendants One Hundred Fifty Six ($156.60) and 60/100ths Dollars, the actual cost of

labor incurred by the plaintiff, without allowance for additional one half thereof, sought by the plaintiff as overtime wages not actually paid, plus Eighty and 09/100ths ($80.09) Dollars for use of its equipment according to plaintiff's equipment rate schedule, and Forty Nine and 96/100ths ($49.96) Dollars, the cost of materials, in all a total of Two Hundred Eighty Six and 65/100ths ($286.65) Dollars; and the defendant is allowed no depreciation other than depreciation of the damaged pole and materials which is taken into account in the plaintiff's cost of materials.'' (Tr. p. 5)

From the foregoing judgment, all of the parties have appealed and assigned errors.

█ Counsel for plaintiff concedes in this Court that since the defendant, Ryder Truck Rental System, Inc., was only a bailor of the truck in question, the trial Court's judgment against that particular defendant is erroneous and, therefore, the assignment of error filed by Ryder Truck Rental System, Inc., is sustained, that portion of the trial Court's judgment against that defendant is reversed and the case dismissed as to Ryder.

The other two defendants insist that the trial Court erred in allowing plaintiff to recover an excessive amount for use of its equipment in replacing the damaged pole and in allowing plaintiff to recover full replacement value of a new utility pole, without applying a depreciation factor consistent with the age and depreciation of the pole which was damaged.

Defendants' counsel vigorously insist here that the plaintiff failed to prove the reasonable operating cost of the equipment used by it in making the repairs. The charges in question on this proposition were thirty cents per mile for a hydra-lift truck, seven cents per mile for a

one-half ton pickup truck and $7.50 per hour for a "bucket truck."

No serious question is made on the seven cents per mile charged for the pickup truck, but counsel for defendants insist that the evidence does not show any reasonable basis for the charges made for use of the hydra-lift truck and "bucket truck."

██ The evidence upon which plaintiff relies to support these charges for use of such equipment is found in the testimony of its General Manager, Mr. W. W. McMaster, as follows:

"Q. How did you arrive at the 30 cents per mile charges for the hydra-lift in this?

A. 30 cents per mile is what in the past year it had averaged approximately to operate it.

Q. How did you arrive at the 7 cents per mile charge for your one-half ton pickup truck used in this job?

A. Same procedure. What the average had been for the previous year.

Q. Is that an experience factor?

A. Yes.

Q. How did you arrive at the $7.50 an hour charge for the bucket truck?

A. The bucket truck was a new piece of equipment which we didn't have experience on, therefore, we had inquired of other Cooperatives that had used them and what they had used for their costs when they had to use it for something other than their own use—something they had to charge for—and $7.50 seemed to be the prevailing rate for charges." (B. of E. p. 10)

Since no countervailing evidence was introduced to show any other prevailing charge for this equipment, we think the foregoing evidence is sufficient to establish the charges made by plaintiff for use of this equipment as the prevailing charges in the community of Woodbury, and, therefore, we conclude that such charges were reasonable.

The defendants next insist that the Court erred in allowing plaintiff to recover full replacement value of a new utility pole without applying a depreciation factor consistent with the age and depreciation of the pole which was damaged.

Counsel for defendants make no question about the fact that it was necessary to replace the pole, but they do vigorously insist here that if we affirm the judgment of the trial Court we must violate the well established rule that the true measure of damages to personal property is the difference in value before and after the accident or occurrence and that, as evidence of this difference in value, the Court has the right to consider the reproduction or restoration cost of the damaged property, providing that a proper deduction is made in that figure for depreciation.

We will agree that it is difficult to apply the general rule, above stated, to the facts of this particular case, and this difficulty stems from the fact that it may sometimes be well-nigh impossible to determine the market value of property for which there is no market.

The equipment damaged in the accident was obviously purchased and installed for one specific purpose, to-wit, the transmission of electric power. This leads us to the conclusion that the only value which can logically

be placed on such equipment is the reasonable cost of replacing it with like equipment which will perform the same function, less the salvage value of the replaced equipment, and this method of arriving at its value does not involve any depreciation.

The evidence in this case shows that in arriving at the damages to be awarded, the defendants were allowed credit for the salvage value of the replaced equipment and were also allowed credit for the amount of $14.43 by which plaintiff had depreciated the pole for accounting purposes.

In our opinion, the credit for salvage value of the damaged equipment was the only credit which should be allowed in the replacement cost, and no credit should be allowed against the actual cost of the labor used in making the repairs.

The difficulty in arriving at market value of such unique property as a utility pole and other electrical transmission equipment seems to have been recognized by the author of McCormick on Damages in the following statement:

"The notion that there is a market for such a unique property stretches the metaphor almost to the breaking point." McCormick on Damages, 3rd Ed., Sec. 44, page 166.

This disposes of all assignments of error filed by defendants.

Plaintiff has filed three assignments of error, in the first two of which it insists that since the repair work was done on an emergency basis, the trial Court erred in allowing plaintiff to recover the cost of labor calculated

only on a straight time basis without allowing an additional one-half thereof, which it insists it was required to pay for such emergency work.

Plaintiff here insists that this Court should pass upon this question, which has heretofore been undetermined in this State, in order to establish a guideline for cases which may involve this question in the future.

■ The difficulty here is that, under the present state of the record, this question is not squarely presented to us. Although the evidence shows that this repair work was classified as emergency and, we may say, properly so, the work was actually done on a regular work day and during regular work hours and such evidence fails to show that plaintiff was actually required to pay the increased wages of 150% of the regular wage for the work that was done in making the repairs in question here. Therefore, the plaintiff's assignments of error numbered one and two are overruled.

■ In its third assignment of error, plaintiff insists that the trial Court erred in sustaining defendants' objections to the admission of testimony by plaintiff which proposed to show the standard procedure and computation followed by the plaintiff in comparable pole damage cases resulting from the negligent acts of tort-feasors.

■ In support of this assignment, plaintiff's counsel cite a quotation from pages 457 and 458 Vol. 31A, C.J.S., and although this authority indicates that the custom of a party or his employees, or the course of conducting his business, may become relevant and material in an action involving some claim or liability arising out of such business, this citation of authority also contains the following language:

"However, the courts recognize the danger of such evidence, and do not look on it with favor; and, to be admissible, its relevancy and probative value must clearly appear." 31A C.J.S. Evidence sec. 180, p. 458.

■ There is still another reason why we cannot sustain this assignment of error, because we must observe the rule that this Court will not reverse on account of the lower Court's refusal to allow a witness to answer a competent and relevant question unless it appears in the record what answer the witness would have made, and that such answer constituted relevant and material evidence. Stacker v. Louisville & Nashville R. R. Co., 106 Tenn. 450, 61 S.W. 766. Since the record does not disclose what the witness' answer to this question would have been there is no merit in this assignment.

All of the assignments of error, with the exception of the single assignment filed by Ryder Truck Rental System, Inc., are overruled and the judgment of the trial Court, as modified as herein indicated, will be affirmed. The costs of this appeal will be paid one-half by the plaintiff and the remaining one-half by the defendants, James Barrett and Coca-Cola Bottling Works, Inc.