57391. HORTON v. GEORGIA POWER COMPANY.

WEBB, Presiding Judge.

Jimmy L. Horton negligently drove his Ford van into a utility pole owned by Georgia Power Company in East Point, as a result of which the pole was broken, necessitating replacement. It was a 55 foot class 3 pole, which carried a 3-phase 20 KV primary, two span guys, two sign stringers and a street light. The power company sued Horton for damages.

Replacement cost was stipulated to be $542.09. It was also stipulated that the actual cost out-of-stock of the pole itself was $200.69 when it was installed in 1974, that the pole had been in place for approximately two years at

the time of the accident, and that while Georgia Power assigns no fixed life expectancy for each pole, the entire distribution system is depreciated for tax and accounting purposes at 3.3% per year. There was no evidence that the pole had any market value or that its value was in fact different from the cost of repairs.

The trial court granted Georgia Power's motion for summary judgment and entered judgment for $542.09. Horton appeals, and we affirm.

The sole question in dispute, both in the trial court and here on appeal, was whether the power company was entitled to recover all its necessary expenses for replacement of the utility pole without deduction for depreciation based upon the age of the pole.

"Damages are given as compensation for the injury done and generally this is the measure where the injury is of a character capable of being estimated in money." Code Ann. § 105-2001. A utility pole is a very small, but nonetheless integral, part of any electrical distribution system. Its value lies in its service, that is, in its remaining in place and continuing to perform its function with many other similar poles and equipment in sustaining an electrical distribution system. It is chiefly or rather exclusively valuable to the power company. It is hardly practical to attempt to apply a measure of damages based on the difference in market value before and after the accident. Cost of repairs is about the only available measure of loss. "Where the property is not marketable its value must be ascertained by such proof as the nature of the case admits of. One criterion of damage may be its actual value to the owner, and this is the rule where it is chiefly or exclusively valuable to him." *Cherry v. McCutchen,* 65 Ga. App. 301, 303 (2) (16 SE2d 167) (1941).

*Zeeman Mfg. Co. v. L. R. Sams Co.,* 123 Ga. App. 99 (179 SE2d 552) (1970), *Housing Authority v. Savannah Iron & Wire Works,* 91 Ga. App. 881 (87 SE2d 671) (1955) and *Housing Authority v. Goolsby,* 136 Ga. App. 156 (220 SE2d 466) (1975), relied upon by Horton, are inapposite. The two housing authority cases involve the measure of damages in condemnation cases, and neither involves the question of damages to an integral part of a larger or more

comprehensive property, or a property such as an electrical distribution system. *Zeeman* was a suit by a lessor against the lessee for damages to a building. The lease involved apparently included a provision that the property was to be returned in the same condition excluding "normal wear and tear."

More analogous to the present factual situation would be instances when fences have been destroyed. The Supreme Court held in *Central R. &c. Co. v. Murray,* 93 Ga. 256, 257 (4) (20 SE 129) (1893), "For fencing injured or destroyed, the recovery should be measured by the cost of restoring it and making its condition as good as that in which it was when injured or destroyed."

" 'The value of the property destroyed, or the cost of restoring or replacing such property, is the proper measure of damages for the destruction of buildings, fences, and other improvements, which may at once be replaced, where the exact cost of restoring the property destroyed is capable of definite ascertainment, and where there is no damage to the realty itself.' [Cits.]" *Empire Mills Co. v. Burrell Engineering &c. Co.,* 18 Ga. App. 253, 256 (2) (89 SE 530) (1916); *NEDA Const. Co. v. Jenkins,* 137 Ga. App. 344, 350 (4) (223 SE2d 732) (1976).

Our view, and we so hold, is that the necessary expense in restoring such pole is the proper measure of damages for its wrongful destruction. This seems to be in accord with the majority of jurisdictions in which a similar question was presented. In New Jersey Power & Light Co. v. Mabee, 41 N. J. 439 (197 A2d 194) (1964), the power and light company, as here, was required to replace a pole hit by an automobile. Said the court: "If the life of every pole was 36 years and if it were clear that each pole would be replaced at the end of that period defendants could well urge that a new pole clearly conferred a benefit beyond the amount of the damage done. The difficulty is that there is no discernible life expectancy of an individual pole and that although the period of 36 years is used for accounting purposes, the pole that was destroyed might well have served for a much longer period and the new pole may last for but a few years. Moreover, because of changes in circumstances or in technology, it cannot be known whether the pole would ever have been replaced.

In short, at least upon the record before us, we cannot say with reasonable assurance that the installation of a new pole did more than remedy the wrong done. An injured party should not be required to lay out money, as defendants' approach would require, upon a questionable assumption that one day its worth will be recaptured."

Similarly, in Mississippi Power & Light Co. v. Tillman (Miss.) 291 S2d 736 (1974), the court held that the question of depreciation of a replaced utility pole, broken by a motorist when his automobile hit the pole, was not a matter for consideration by jury on issue of damages, when the utility pole was an integral part of the electric distribution system and had no value of its own, but had value only as such integral part of a complete distribution system. To like effect are Louisiana Power & Light Co. v. Smith (La. App.) 343 S2d 367 (1977); Middle Tenn. EMC v. Barrett (Tenn. App.) 410 SW2d 914 (4) (1966); Polk v. Okla. Gas & Elec. Co. (Okla.) 410 P2d 547 (1) (1966); Hartford Elec. Light Co. v. Beard (Conn.) 213 A2d 536 (1965); Carolina Power & Light Co. v. Paul, 261 N.C. 710 (136 SE2d 103) (1964); Appalachian Power Co. v. Morrison (W. Va.) 165 SE2d 809 (1969); Ohio Power Co. v. Johnston, 18 Ohio Misc. 55 (247 NE2d 338) (1968).

*Judgment affirmed. Banke and Underwood, JJ., concur.*

ARGUED MARCH 5, 1979 — DECIDED
MARCH 13, 1979.

*Powell, Goldstein, Frazer & Murphy, Robert M. Travis,* for appellant.

*Troutman, Sanders, Lockerman & Ashmore, Frederick E. Link, Robert L. Pennington,* for appellee.