**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Fred T. SULLIVAN, et al., Defendants–Appellants.**

No. 92–8268.

United States Court of Appeals, Eleventh Circuit.

Sept. 15, 1993.

Arthur Timothy Jones, Eric E. Huber, Freeman & Hawkins, Atlanta, GA, Michael R. Carey, Carey, Aylward & O'Malley, Tampa, FL, for defendants-appellants.

James R. Schulz, Asst. U.S. Atty., Atlanta, GA, for plaintiff-appellee.

Before COX and BLACK, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge.

The government brought this trespass action for damages arising when appellants clear cut timber on lakeshore property on Lake Lanier, Georgia. Appellants challenge the district court's holding that the subject realty was unique and without market value and that the proper measure of damages under Georgia law was the cost of restoration, as well as the jury verdict itself on several grounds. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 1982, Tim and Avie Sullivan purchased a parcel of property located in the center of a pear-shaped peninsula on Lake Sidney Lanier, Georgia. The shoreline surrounding the Sullivan property was owned by the United States and managed by the United States Army Corps of Engineers (Corps), pursuant to a lakeshore management plan. The Corps property was open to the public for recreation, swimming, and picnicking.

In 1988, portions of the Sullivan property and the adjacent Corps property became infested with southern pine beetles.[1] In July of 1988, Avie Sullivan confirmed that her property was infested with southern pine beetles and subsequently contacted the Corps. This resulted in a meeting between herself and two park rangers who took a walking tour of the property. During this meeting, Ms. Sullivan and the rangers discussed the possibility of using a single tree-cutting service to remove the infested trees from both properties. Although no written permit was ever issued to allow the Sullivans to cut trees on public property, Ms. Sullivan claims that she received verbal permission from the park rangers to remove the trees.

Ms. Sullivan contacted Lamar and Robert Suddeth about removing the infested trees. In September of 1988, the Suddeths began to cut and remove trees from both the Sullivan property and the Corps property. The tree removal continued until November 14, 1988, when a park ranger ordered Robert Suddeth to stop operating heavy equipment on public property. The next day, a Corps representative called Ms. Sullivan and informed her that the pine beetle operation required a permit. On November 28, Erwin Topper, the Resource Manager of Lake Lanier sent the Sullivans a cease and desist letter. Nevertheless, on December 5, a park ranger noticed heavy equipment work being done along the shoreline adjacent to the Sullivan property. The ranger approached Mr. Kiser, who was operating the bulldozer, and instructed him to discontinue his work. At that point, work on the Corps property was discontinued and shortly thereafter, grass was planted to prevent erosion.

The government planted 4,850 trees plus bushes to replace the trees that had been cleared, at an expense in excess of $5,000. The government then filed suit against Tim and Avie Sullivan, the owners of the adjacent property; William Kiser, the operator of the bulldozer; and Lamar and Robert Suddeth, the brothers hired to clear the trees. The government claimed that the defendants entered upon its property without consent and cleared several acres of vegetation and trees. A jury returned a verdict in favor of the government and against the defendants as follows:

| | |
|---|---|
| Fred T. Sullivan | $100,000; |
| Avie Sullivan | $100,000; |
| Lamar Suddeth, Inc. | $9,476; |
| Robert Suddeth | $9,476; and |
| William W. Kiser | $100. |

Immediately after the verdict was rendered, the district court sent the jury out for further deliberations on two questions. The first was: "Do you find liability as to Lamar Suddeth? Yes or No."[2] The second was: "Answer for the court: What do you find the total amount of damages sustained by the plaintiff to be, the total figure?" The jury returned with a finding that the total amount of damages to be recovered by the plaintiff was $219,052. The district court then entered two separate judgments in favor of the government: one in the amount of $218,952 against appellants Tim and Avie Sullivan and Lamar and Robert Suddeth, jointly and severally; and one in the amount of $100 against William Kiser. Following denials of motions for judgment notwithstanding the verdict, for remittitur and for a new trial, appellants timely filed this appeal. William Kiser chose not to appeal and is not a party on appeal. Appellants challenge the district court's instruction to the jury on the proper measure of damages, and they challenge the jury verdict itself on several grounds.

## DISCUSSION

### I. Measure of Damages

■ Appellants contend that the district court improperly instructed the jury on the proper measure of damages.[3] The standard

---

1. The southern pine beetle is a destructive insect which can cause the mass destruction of pine forests.

2. This had to be asked because the listing of Lamar Suddeth, Inc., as opposed to Mr. Suddeth personally was a clerical error on the verdict form.

3. The district court instructed the jury on the issue of market value and damages as follows:

 "[N]ormally damages for a trespass would be the difference between the value before a trespass and the value after the trespass. However, under special use properties or where there's no market value for the property then [diminution in market value] is not the proper

applied by this court when reviewing jury instructions is deferential: "So long as [the] instructions reflect the pertinent substantive law, the trial judge is given wide discretion as to the style and wording that [he] may employ." *McElroy v. Firestone Tire & Rubber Co.*, 894 F.2d 1504, 1509 (11th Cir.1990). "If a requested instruction is refused and is not adequately covered by another instruction, the court will first inquire as to whether the requested instruction is a correct statement of the law. In such a scenario, if the requested instruction does accurately reflect the law, the next step is to assess whether the instruction addresses an issue that is properly before the jury." *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1569 (11th Cir.1991). Consequently, our first inquiry is whether the district court was correct in holding that the subject property is unique and has no market value. This inquiry is governed by Georgia law.[4]

■ There are no Georgia cases directly on point, as none have determined whether government-owned shoreline has a market value, although at least one Georgia decision has recognized that land used as a park has a special, inherent value as a park. *See Louisville and Nashville R.R. Co. v. Kohlruss*, 124 Ga. 250, 251, 52 S.E. 166 (1905) ("If the evidence shows that the trees were ornamental trees and were situated in an enclosed park and planted there for park purposes only, the jury may take into consideration the value of the trees for the purpose intended, and how much the premises had been damaged by their destruction; that is, how much the park, as a park, has been damaged by the loss of the trees."). The general rule in Georgia is that "the measure of damages involving real property is the diminution in fair market value of the land, that is, the difference in the value of the property before and after the injury." *Whitaker Acres, Inc. v. Schrenk*, 170 Ga.App. 238, 241, 316 S.E.2d 537 (1984). The cost of restoration has been used as an exception to the general rule in the following situations: (1) an action "involv[ing] damage to any building or structure of the property," (2) an action "involv[ing] a continuing trespass which can be remedied by the making of certain 'repairs' to the property," and (3) an action "involv[ing] the loss of an article having no market value." *Id.* at 241–42, 316 S.E.2d 537; *see also Cherry v. McCutchen*, 65 Ga.App. 301, 16 S.E.2d 167 (1941) (family heirloom painting had no market value); *Horton v. Georgia Power Co.*, 149 Ga.App. 328, 254 S.E.2d 479 (1979) (utility pole served a unique purpose).

■ In the instant case, the district court relied on the third exception to the *Whitaker Acres* test in holding that the lakeshore property constitutes special use property that is unique and without market value. Appellants argue that the district court improperly took the issue of market value and consequently, the appropriate measure of damages away from the jury by determining that the subject realty was unique and had no market value. The proper measure of damages to be applied by the jury is a matter that may be determined by the court.[5] The district court

measure of damages because the value is difficult or impossible of determination. In a case such as that, as in this case, the proper measure of damages become the cost of repair or the cost of restoration of the property, and therefore that's the element of damages or the measure of damages that you should consider."

4. The government contends that federal law governs this case because it involves a question regarding the rights of the United States arising under a nationwide federal program to control the flooding of private lands. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). However, this case does not arise out of the lakeshore management program, nor will application of Georgia law contravene any federal policy contained therein. *United States v. Williams*, 441 F.2d 637, 643 (5th Cir.1971) (In the absence of a contravening federal statute or policy, suits to protect the government's proprietary interests are local in nature.). The primary issue in this case pertains to the question of damages arising out of an alleged trespass. Therefore, Georgia law must be examined to determine the appropriate measure of damages. *Mason v. United States*, 260 U.S. 545, 558, 43 S.Ct. 200, 204, 67 L.Ed. 396 (1923) (damages for conversion are within the scope of state legislation).

5. As the district court stated, Georgia cases strongly "imply that the question of whether property has a market value (and, by extension, what measure of damages is to be used) is a question for the court and not the jury." In *Horton*, the Georgia Court of Appeals affirmed a grant of summary judgment where the only issue

reasoned that the parcel of government shoreline at issue here is not simply an isolated piece of property with timber on it, but instead is part of an environmental system. It is not available for sale, nor is it likely to be sold in the future. The property benefits the public by providing access to the lake as well as preventing the flooding of private property. Furthermore, the subject property was covered by a complex lakeshore management plan which required a certain amount of forest and canopy in order to protect the wildlife, prevent soil erosion, and comply with numerous other congressional objectives for lakeshore property. As a part of a whole environmental system, the property needed to remain as it was in order to continue to perform its function. The value of the forest in the ecological scheme of things far exceeds the market value of the fallen timber. One cannot put a market value on the loss of a thirty year old forest. A more accurate, and more logical measure, is the cost to restore the land, as near as possible, to its original condition.

## II. Defective Verdict

 Appellants moved for a new trial on the grounds that the verdict was against the weight of the evidence and that it indicated an impermissible compromise by the jury. Generally, we review a district court's denial of a motion for new trial for an abuse of discretion. *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984). A new trial should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence. *Id.*

 Appellants point to the vast difference between the government's figure of estimated damages of $614,000 and their own maximum damage figure of $5,276, and argue that since the government never introduced evidence itemizing the cost of reforestation, there was no basis for the jury to "pick and choose" among the items of cost and there-

fore there is no evidence to support the damage figure arrived at by the jury. However, testimony throughout the trial indicated that numerous factors could effect the cost of reforestation, such as the number and kind of trees purchased, the age of those trees, and the expenses involved in planting them. The government presented expert testimony that restoration of the property called for the replanting of 600 native trees per acre, at an average cost of $200 per tree for 6.26 acres. This amount came to $307,000 and was doubled to cover installation and a one year guarantee. The jury was free to listen to the testimony, reject both figures offered by the parties, and arrive at a figure which seemed reasonable to it. Considering the varying estimates admitted into evidence, the jury's verdict of $219,000 was well within the range of damages that the evidence would support.

 A compromise verdict results when jurors resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages. *Mekdeci by and through Mekdeci v. Merrell National Labs*, 711 F.2d 1510, 1513–14 (11th Cir.1983). Ironically, the party that one would expect to raise this issue is the government, which was awarded substantially less in damages than it sought. However, the jury enjoys substantial discretion in awarding damages within the range shown by the evidence, and while the jury may not pull figures out of a hat, its verdict does not fail for a lack of exhaustive or dispositive evidence so long as a rational basis exists for the calculation. *Nieman-Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 372 (5th Cir.1990). As discussed above, the jury's verdict was supported by the evidence and we find this argument to be completely without merit.

## III. Evidence of Consent

 Appellants argue that the government failed to establish lack of consent as an

---

was the proper measure of damages. Both parties stipulated to the replacement cost as well as the actual out-of-stock cost. The utility pole at issue in *Horton* had a market value in that it could be purchased for $200, but the court determined that its real value derived from its use as

an integral part of an electrical distribution system. Similarly in this case, if the Corps decided to sell the lakeshore property, a price could be determined, but the property's true value came from the function it performed as part of an overall environmental system.

element of their case in chief, and therefore appellants were entitled to judgment in their favor. *See e.g., Scott v. Leder,* 164 Ga.App. 334, 297 S.E.2d 103 (1982). The only evidence relating to the issue of consent came from Ms. Sullivan, who testified that she received permission to cut down the infested timber on Corps land. However, there was substantial evidence to the contrary that would allow the jury to discredit Ms. Sullivan's testimony. Mr. Mullin, who was one of the Corps representatives who allegedly assented to the cutting, denied ever giving permission for the cutting. Mr. Topper, the Resource Manager of Lake Lanier, stated that he was the only person who had authority to permit a cutting of this size. No written work permit was ever issued and the cutting continued even after the need for a permit was clearly communicated to the Sullivans. In addition, rather than cut only the infected pines, the land was cleared of all trees, including hardwoods. We conclude that the government produced sufficient evidence to negate appellants' defense of consent.

IV. Alteration or Amendment of Jury Verdict

 Appellants also appeal the denial of their motion for a new trial on the grounds that the district court improperly amended the jury's verdict by combining four out of the five several verdicts into a single joint and several judgment and then entering two separate judgments. We review the district court's rewriting of an apportioned or several verdict into a joint and several verdict to determine whether the court's actions were within the scope of Rule 60(a) of the Federal Rules of Civil Procedure or the inherent equitable powers of the court.

 Initially, we note that "although we are bound by Georgia substantive law on joint and several liability, the incidents of jury trial are for the federal courts to decide for themselves, guided by the Seventh Amendment, and are not a matter on which state law should be given any effect." *Stuckey v. Northern Propane Gas Co.,* 874 F.2d 1563, 1572 (11th Cir.1989). The district court may correct damage awards that initially allocate damages among defendants who are actually jointly and severally liable. *G.A. Thompson and Co. v. Partridge,* 636 F.2d 945, 963–64 (5th Cir.1981). In *G.A. Thompson,* the court amended a several verdict into a joint and several verdict, stating that the jury's misunderstanding of the court's instruction on joint and several liability was so obvious that it was not unlike a clerical error under Rule 60(a).

 Under Georgia law, a trespass involves entering upon the land of another without consent. *Gloss v. Jacobs,* 86 Ga.App. 161, 167, 71 S.E.2d 253 (1952). The undisputed evidence shows that the Suddeths, acting at the direction of the Sullivans, entered upon the Corps property and cut down trees standing thereon. The only factual issue in dispute is whether the Sullivans received consent from the Corps to engage in this activity. The jury's verdict awarding damages against the appellants shows that they discounted appellant's defense of consent and found that a trespass did in fact occur. Given Georgia law and the facts of this case, if a trespass occurred then the Sullivans and Suddeths are, as a matter of law, jointly and severally liable for any damages caused by the trespass.

The district court instructed the jury that "if you find that one or more of the defendants committed a trespass on the land of the plaintiff, either acting for him or herself, or under the direction of another one of the defendants, you of course will find against that defendant in favor of the plaintiff. If you find that a defendant was acting under the direction of another defendant, you of course shall find against both of them jointly and in favor of the plaintiff." These instructions clouded the issue of joint and several liability. A jury could conclude from these instructions that if it found that a defendant was acting under the directions of another defendant, then it could find "against that defendant" *or* "against both of them jointly." However, the undisputed facts dictate that any finding of liability against the appellants must be joint and several. The fact that the jury returned several verdicts against each defendant shows that they were confused on this question of law and the district court

**1198**

was correct in amending the several verdicts into a single joint and several verdict.

■] The jury returned a nominal verdict of $100 against Mr. Kiser, the bulldozer operator, and the district court entered a separate judgment against him in this amount. In closing arguments, the government asked the jury to hold Mr. Kiser liable for $200, which was to represent the fruits of his labor on the two days when he was operating his bulldozer on public property. The government did not argue for joint liability against Mr. Kiser nor is there any evidence to support such liability. The record reveals that Mr. Kiser did not act in concert with the appellants in cutting the timber, but rather that he committed a separate trespass by entering upon the Corps property for the purposes of grading the land. In light of this, the $100 verdict against Mr. Kiser not only is reasonable, but also should be separate from the other four defendants.

For all of the foregoing reasons, the judgment of the district court is AFFIRMED.