*555 OPINION OF THE COURT
Joseph J. Maltese, J.
At a bench trial this court was confronted with a variation of the philosophical question: “If a tree falls in the forest and no one hears it did it make a sound?” Here the court was presented with facts, which presented the question: “If trees are cut in a forest that were going to be removed anyway does the owner have compensable damages?” To the philosophical question, this court does not venture an opinion. But as to the second question, after a review of the facts and the governing law, this court finds that the damages were nominal and awards the plaintiffs $100 and trebles the award to $300 pursuant to Real Property Actions and Proceedings Law § 861, which was in effect at the time of the trespass, plus interest, costs and disbursements.
This court makes the following findings of fact and conclusions of law.
Findings of Fact
Plaintiffs are land developers who own a large tract of unimproved wooded land in the south shore on Staten Island. The plaintiffs have sued the defendants for trespass and for a violation of Real Property Actions and Proceedings Law § 861, for cutting trees without the permission of the owner. The plaintiffs have not sued for conversion or the wrongful taking of the tree cuttings.
The defendants, Joseph and Joan Motta, own a house, which they share with their young children, at 368 Boscombe Avenue, Staten Island, New York, that abuts the plaintiffs’ land. The defendants, through their attorney, have argued that the unattended trees on the plaintiffs’ land had created a nuisance, where some of the trees hung over the defendants’ property and where fallen leaves had clogged their pool drains. The defense counsel has previously argued to this court that the Mottas’ neighbor, whose property also abuts the plaintiffs’ land, had cut down a swathe of trees to create a 100-foot buffer zone between his backyard and the tree line, without any permission or objection from the plaintiffs. Seeking to create a similar buffer zone to safeguard his own property, Joseph Motta authorized a landscaper to cut the trees that overhung his land and to create a buffer zone away from the unattended trees for fear of insects and the West Nile virus, which were prevalent in Staten Island around the time of the cutting of the trees.
*556 While the Mottas were not home, the landscaper and his crew went about cutting the trees and apparently became overzealous in their endeavors. They cut down various trees without the consent of the plaintiffs, nor the actual direction or supervision of the defendants. Apparently, an unknown concerned neighbor called the police to inform them that trees were being cut while the Mottas were not home. Since this involved tree cutting, police officers from the New York City Department of Environmental Protection responded to the premises and observed a wood chipper feeding into an open container. Upon confronting the landscaper, the police officers ascertained that the defendant, Joseph Motta, authorized him to clear out some trees. The landscaper called the defendant by cell phone at his job and he drove over and ultimately acknowledged that he authorized the cutting of the trees. The extent of how much of an area he asked the landscaper to cut was never established in this trial.
Nonetheless, the police officers originally estimated that approximately 100 to 200 trees were cut in an area about half the size of a football field. But upon cross-examination, they disclosed that they were not certain how many trees were cut down. The police officers issued Motta five summonses for cutting down trees without permission and for placing a container on the street without a permit. All of those charges were dismissed by the criminal court, except for the container charge, wherein the defendants paid a $250 fine.
Notwithstanding the overzealousness on the part of the landscaper, who was not issued any summonses, nor was he sued in this action, this court previously found the Mottas liable for cutting the trees. Therefore, this court is left with the task of assessing damages.
The plaintiffs, as absentee owners, were not immediately aware of the cut trees, but were made aware after an investigation to ascertain the owner of the tract of land. In assessing the damages, which occurred on October 22, 2003, the plaintiffs assert that the law to be followed is Real Property Actions and Proceedings Law § 861, as amended on March 1, 2004, which states in pertinent part:
“Action for cutting, removing, injuring or destroying trees or timber, and damaging lands thereon.
“1. If any person, without the consent of the owner thereof, cuts, removes, injures or destroys, or causes to be cut, removed, injured or destroyed, any under-wood, tree or timber on the land of another ... an *557 action may be maintained against such person for treble the stumpage value of the tree or timber or two hundred fifty dollars per tree, or both and for any permanent and substantial damage caused to the land or the improvements thereon as a result of such violation. Such reparations shall be of such kind, nature and extent as will reasonably restore the lands affected by the violation to their condition immediately before the violation and may be made by physical restoration of such lands and/or by the assessment of monetary payment to make such restoration . . .
“3. For the purposes of this section ‘stumpage value’ shall mean the current fair market value of a tree as it stands prior to the time of sale, cutting, or removal. Stumpage value shall be determined by one or more of the following methods: the sale price of the tree in an arm’s-length sale, a review of solicited bids, the stumpage price report prepared by the department of environmental conservation, comparison with like sales on trees on state or private lands, or other appropriate means to assure that a fair market value is established within an acceptable range based on the appropriate geographic area.”
However, the defendants argue that applying a statute with an effective date of March 1, 2004 to an incident that occurred on October 22, 2003 would be enforcement of a law ex post facto and would be a misapplication of the law in existence at the time of the incident. The defendants instead contend that the appropriate law governing this issue is the version of RPAPL 861 in effect on October 22, 2003, which reads, in pertinent part:
“Action for cutting or carrying off trees or timber; when treble damages may be recovered.
“1. If any person cuts down or carries off any wood, underwood, tree or timber, or girdles or otherwise despoils a tree on the land of another, without the owner’s leave . . . without having right or privilege in those lands or license from the proper officer, an action may be maintained against him by the owner . . .
“2. In an action brought as provided in this section, the plaintiff may state in his complaint the amount of his damages and demand judgment for treble the sum so stated. Thereupon, if the inquisition or, *558 where issues of fact are tried, the verdict, report or decision, awards him any damages, he is entitled to judgment for treble the sum so awarded.”
The plaintiffs contend that the March 1, 2004 version of RPAPL 861 was remedial in nature because it provided as damages “[three times] the stumpage value of the tree or timber or [$250] per tree.” Moreover, plaintiffs contend that since they filed suit on October 12, 2004, after the March 1, 2004 effective date, that the new law should apply. This court disagrees and finds that the version of the statute in effect at the time of the incident is the enforceable statute. In accordance with the version of RPAPL 861 in effect on October 22, 2003, there is no statutory formula by which to assess the amount of actual damages to the plaintiffs.
Plaintiffs’ counsel has disclosed to this court that his clients intend to develop the wooded tract into a large development of houses. In order to do so, plaintiffs must clear large sections of trees to comply with an approved plan. The plaintiffs have shown this court the mapped plan for development, which includes not only several houses, but a newly created roadway and street system. Ironically defendants’ counsel has argued that the defendants rendered a benefit to the plaintiff developers in removing trees at no expense to the plaintiffs, that ultimately will have to be removed in order to complete the plaintiffs’ building project.
The plaintiffs presented William Trang, a professional engineer, who presented a map of the disturbed area. The plaintiffs also presented Ralph E. Huddleston, an environmental scientist who has a Master’s degree in aquatic and fisheries biology from Eastern Kentucky University, and whose curriculum vitae indicates that he is an expert in delineating “wetlands” for the state and federal governments. Mr. Huddleston testified that he visited the site of the tree cutting and could not count the number of tree stumps because they were cut to the ground. He then attempted to calculate the number of trees in the neighboring area by using a sample of 11 quadrats, 10-foot-by-10-foot squares around the perimeter of the disturbed area. He then identified the vegetation as saplings and trees and then extrapolated the information from the 11 quadrats around the disturbed area, which he estimated to .34 acres or one third of an acre. Mr. Huddleston estimated that it would take 484 three-inch saplings to replace the trees that were cut, which he estimated would cost $180,630.83 in 2006, and $190,630.83 in *559 January 2008. The basis of these estimates both in number and cost was never clear to this court. When asked on cross-examination for the photos of the area, Mr. Huddleston claimed he did not take any photos of the area, but relied on some aerial photographs, the source of which was never disclosed.
This court finds that Mr. Huddleston’s use of an estimate as opposed to an actual attempt to count the cut trees to be speculation rather than reality. This court also finds Mr. Huddleston’s testimony to be incredible that 484 tree saplings could or should be planted on an area that is only one third of an acre in size. It is even more preposterous that 484 tree saplings should be planted on an area which is about to be developed by the plaintiffs, which would require removing most of the trees.
The plaintiffs also presented Stanley Krebushevski, a licensed architect who spoke about the requirements of the South Richmond District in maintaining a certain number of trees on the premises. On examination, Mr. Krebushevski disclosed that if trees were removed by an act of God, i.e., wind or fire, or if they were removed by a third party without the consent of the owner, then there is no requirement to replace all of the trees. In such an event, restoration of the trees, if any, would be reviewed by the Department of Buildings on a case by case basis. Here, the Department of Buildings has not opined about this matter.
The defendants have presented Henry Salmon, a renowned certified real estate appraiser who holds a Master’s degree in real estate development from New York University. Mr Salmon testified credibly that there is no diminution in the value of the land because the trees were to be cut anyway to make way for the plaintiffs’ building project. When asked whether the cut trees would violate the South Richmond Zoning Resolution, Mr. Salmon testified that there would be no violation for the very reason that the builder or developer did not remove the trees because they were removed by a third party without their consent. Hence, any argument that the South Richmond Zoning Resolution would require restoration of the trees cut is a nonexistent requirement. Accordingly, the defendants’ certified real estate appraisal expert, Henry Salmon, concluded that the diminution in the value of the land is unascertainable.
If a tree falls in the forest . . .
Philosophers have posed the question: If a tree falls in the forest and no one is around to hear it does it make a sound? *560 This is a variation of the question posed by Mann and Twiss in their 1910 textbook Physics: “When a tree falls in a lonely forest, and no animal is near by to hear it, does it make a sound? Why?”[1] The authors then went about describing the options of sound waves and whether sound is only sound if a person hears it.
The court is now confronted with another variation of that age old question — if trees are cut in a forest that were going to be cut anyway does the owner experience a compensable loss?
To answer that question this court has turned to the New York Court of Appeals decision of Hartshorn v Chaddock,[2] which stands for the principle that the measure of damages for permanent injury to real property is the lesser of the decline in market value and the cost of restoration.[3] The Hartshorn principle for assessing the proper assessment of damages for real property has been followed by the New York courts for over 100 years. Indeed, Hartshorn is the first case mentioned whenever there is a discussion concerning the assessment of damages for real property. Hartshorn has been ratified by the Court of Appeals in Jenkins v Etlinger in 1982,[4] where the High Court stated that while the plaintiff may demonstrate the costs of restoration, it is the burden of the defendant to prove that a lesser amount than that claimed by the plaintiff will compensate for the loss.[5] The court continued, “[sjimply stated, the plaintiff need only present evidence as to one measure of damages, and that measure will be used when neither party presents evidence going to the other measure.”[6]
Here, the plaintiffs have only presented speculative testimony of the value of the restoration and have totally disregarded balancing that testimony with the other evidence in this case, namely, that there is no decrease in the value of the land, especially when it is to be cleared for development.[7]
Similarly, in Byrdcliffe Music v Craig,[8] the Appellate Division, Second Department, affirmed a jury verdict, where the plaintiff *561 had no claim for conversion, and awarded no damages when asked to assess the lesser amount of the replacement costs of the trees as measured against the diminution in the market value of the property. There, the jury assessed no diminution in value. This principle has been extended throughout New York jurisprudence. Chief Judge Kaye, writing for the Court of Appeals in 2002 in Fisher v Qualico Contracting Corp.,[9] followed and cited to the Hartshorn rule that when the cost of restoring is more than diminution in market value, the reduced market value is the true measure of damages.
In Fisher,[10] Chief Judge Kaye, quoting Jenkins v Etlinger,[11] stated that “[ejvidence of a lesser measure of damages, not unlike mitigation evidence, ensures that a plaintiff receives ‘no more than is reasonably necessary to remedy fully the injury while avoiding uneconomical efforts.’ ”
Conclusions of Law
In the case before this court, there was no claim for conversion and the plaintiffs wrongfully relied upon the March 1, 2004 version of RPAPL 861 where a statutory formula was established to present a measure of damages, namely $250 per tree cut, or the actual value of those trees. But that was not the law when this incident occurred.
This court does not condone the actions of the defendants in contracting with a landscaper to trespass and cut down any of the plaintiffs’ trees without their permission. Indeed, this court granted the plaintiffs summary judgment on the issue of liability. However, the issue of damages in assessing the value of the trees cut in order to restore the property to its original condition, versus the diminution in the value of the land about to be developed, is more troublesome. In applying the Hartshorn rule of taking the lesser of the values between restoration, which was most speculative, and no diminution of the value of the land, this court finds that there was no diminution in the value of the land.
Interestingly, the defendants attempted to purchase the affected property from the plaintiffs, but they refused to offset any value for the loss of the trees when fixing the price of the land as a buildable plot of land. This reinforces defense counsel’s *562 argument that this action was only about getting startup capital for a building project from the defendants, rather than the value of the lost trees that would never be replanted.
More importantly, the defendants presented this court with an aerial photograph of the area taken three years after the cutting. The photographs show that the area has naturally overgrown to the point where it is indistinguishable from the surrounding wooded areas. This buttresses the argument that there is no diminution in the value and, hence, no quantifiable damages to he awarded.
Consequently, the plaintiffs have not demonstrated by a preponderance of the credible evidence that they have sustained a compensable loss.
Accordingly, this court hereby orders that the plaintiffs are awarded damages in the nominal sum of $100, which is tripled to $300, together with interest, costs and disbursements.

. Charles Riborg Mann and George Ransom Twiss, Physics, at 235 (1910).

. 135 NY 116 (1892).

. Id. at 122.

. 55 NY2d 35 (1982).

. Id. at 39.

. Id. (citations omitted).

. Property Owners Assn. of Harbor Acres v Ying, 137 AD2d 509 (2d Dept 1988).

. 143 AD2d 869 (1988).

. 98 NY2d 534 (2002).

. Id. at 539.

. 55 NY2d at 39.