Village of Monroe v Greenfeld (2025 NY Slip Op 25173)

[*1]

Village of Monroe v Greenfeld

2025 NY Slip Op 25173

Decided on July 28, 2025

Supreme Court, Orange County

McGovern, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 28, 2025
Supreme Court, Orange County

Village of Monroe and TOWN OF MONROE, Plaintiffs,

against
Joseph Greenfeld, JUDITH GREENFELD, JOEL WEISENFELD, BOARD OF MANAGERS of 131 FOREST AVENUE CONDOMINIUM, 
 JOHN DOE WERCZBERGER, ANTHONY (TONY) MONGELLI, INDIVIDUALLY AND AS OWNER OF A.M.J. TRUCKING, INC, and OMRI GALLAY, INDIVIDUALLY AND AS OWNER OF GALLAY INC., Defendants.

Index No. EF004685-2018

Sokoloff Stern LLP, by Brian S. Sokoloff, Esq,
Attorneys for Plaintiff Village of Monroe 
Feerick Nugent MacCartney, PLLC, by Brian D. Nugent, Esq.
Attorneys for Plaintiff Town of Monroe
Blustein, Shapiro, Frank & Barone LLP, by Gardiner S. Barone, Esq.
Attorneys for Defendants 131 Forest Avenue Condominium Board of Managers
Barry McTiernan & Moore LLC, by Kevin G. McGuire, Esq.
Attorney for Defendants Omri Gally and Gallay, Inc. 

Kyle C. McGovern, J.

The following papers filed electronically were considered in connection with the motion in limine by Defendant Board of Managers of 131 Forest Avenue Condominium (Mot. Seq. #8) for an Order (a) determining the appropriate measure of damages for Plaintiffs' trespass and nuisance claims shall be the lesser of (1) the diminution of value of Plaintiffs' property or (2) the cost of restoration of the property; and (b) determining that, in order to be entitled to an award of punitive damages, Plaintiffs must establish Defendants acted with actual malice involving intentional wrongdoing or that such conduct amounted to a wanton, willful or reckless disregard of the Village's right of possession to its parkland located on Village Parcel:

 Notice of Motion In Limine, Affirmation in Support, Exhibits A- G, Memorandum of Law in Support Doc. 292-301
 
Affirmation in Support of Motion In Limine, Exhibits A- F Doc. 302-308
 
 Affirmation in Opposition, Exhibit 1A- G, Memorandum of Law In Opposition Doc. 312-314
Reply Memorandum of Law Doc. 315

Reply Affirmation Doc. 316

On April 27, 2018, Plaintiffs Village of Monroe ("Village") and Town of Monroe [FN1]
("Town") commenced this action for compensatory damages to recover the costs of remedial restoration for Town/Village property and for equitable relief, requiring Defendants to remove materials allegedly deposited on its parkland, including but not limited to dirt, rocks, and portions of trees, as well as to remove any "nuisance" conditions upon the property. The full recital of the underlying facts alleged are contained within this Court's Decision and Order dated September 27, 2022 (Hyer, J.) that decided Defendants' motions for summary judgment (Mot. Seq. #3-6).[FN2]
As to the remaining parties, this matter is scheduled for a bench trial on August 4, 2025.
During several recent court conferences, counsel have raised the question as to the appropriate measure of the Village's damages should the Court find Defendants liable on the trespass and nuisance claims. As directed by the Court, Defendant Board of Managers of 131 Forest Avenue Condominium ("Board of Managers") filed the instant motions in limine and Defendants Omri Gallay and Gallay, Inc. ("Gallay Defendants") have also submitted papers in support of the application. Accordingly, the Court considers the supporting arguments advanced by these Defendants, as well as the Village's opposition, in determining the motion.
Defendants' motion in limine
Defendant Board of Managers and the Gallay Defendants (collectively "Defendants"), together seek a pre-trial determination that: (i) the appropriate measure of damages for Plaintiffs' trespass and nuisance claims is the lesser of the diminution in value of the parkland or the reasonable cost of restoration of the parkland; and (ii) in order for punitive damages to be awarded, Plaintiffs must prove Defendants acted with actual malice involving intentional wrongdoing or that such conduct amounted to a wanton, willful or reckless disregard of the Village's right of possession of the parkland.
Plaintiffs assert five causes of action: two for trespass, two for nuisance, and one for the violation of Town of Monroe Code §23-11. Plaintiffs' Amended Complaint seeks an Order directing Defendants (1) to remove all debris from the Village Parcel; (2) to restore to the parkland to as close to its prior natural state as possible; (3) to seed and stabilize the parkland slope; (4) to pay the Village compensatory damages for the cost of restoration; (5) to pay the costs incurred by Plaintiffs' municipal engineers related to the restoration of the parkland; (6) to [*2]pay $100,000 to the Village in punitive damages for "intentional and malicious trespass and damage"; and (7) to remove any nuisance conditions from the parkland.
During court conferences, Plaintiffs have taken the position they need only present evidence of the cost of restoration for the parkland, and that no other measure of damages is applicable because the parkland is public property. Without conceding liability, Defendants contend the proper measure of damages is the diminution in value of the property rather than the cost of restoration, and they bring this motion seeking advance determination of the applicable measure of damages available to Plaintiffs should they prevail on the trespass and nuisance claims. 
Defendants' moving papers assert well-settled law in New York as prescribed in New York's Pattern Jury Instructions, where a defendant is found to have damaged property through trespass and nuisance, "the measure of damages for injury to real property is the lesser of the decline in market value and the cost of restoration. The burden is on the defendant to prove that the lesser amount than that claimed by the plaintiff provides sufficient compensation for the loss." NY Pattern Jury Instruction - Civil 3:8. Defendants argue this alternative measure of damages is necessary to ensure a plaintiff receives no more than is reasonably necessary to fully remedy the injury. Defendants argue the proper measure of damages should be the diminution in value of the allegedly damaged area, which is approximately 0.30 acres. In support of their position, Defendants offer the testimony and report of Brian A. Amiel, a certified general real estate appraiser with Certified Appraisal Service. Using a sales comparison approach and assigning a pre-trespass value of $930,000 and a current "as is" value of $900,000, Mr. Amiel determined the total diminution in value to be $30,000, which he then multiplied by the percentage of parkland damaged to reach the final diminution of value amount of $9,000.
The Village's Opposition
In its opposition papers, the Village devotes significant attention to characterizing the instant application as "yet another step by Defendants to avoid responsibility" for the damages to its parkland. When eventually addressing the legal arguments posed by Defendants in their motion, Plaintiff contends the Court should depart from New York's Pattern Jury Instructions due to the unique municipal use and ownership of the parkland. Plaintiff contends the Court should look to the Restatement (Second) of Torts, which it argues provides for the departure from the "alternative measure" where the property is unique or there is a reason, personal or individual to the owner, requiring restoration even though the cost of restoration exceeds the diminution of value. The Village further argues the "alternative measure of damages" rule cannot be applied as diminution in value cannot be determined for public parkland that has no market value.
To support its position, the Village looks to federal cases outside of New York addressing the difficulties in applying the alternative measure of damages to public land. According to the Village, without any market value to apply to a public parkland, the proper remedy should liability be found against Defendants under trespass and nuisance, is the cost to restore the parkland to its original condition.[FN3]

The parkland is described as 80 acres of developed and undeveloped land that houses pavilions, rest rooms, parking lots, a skate park, hiking trails, a fitness course, illuminated recreational ballfields and tennis courts, a dog park, a pond, and a 2600 square-foot recreation building. The Village offers the testimony of Gary Roach, an arborist, who evaluated the detrimental effects of Defendants' dumping on the area. According to Mr. Roach he observed, "[t]he dumping of the fill at 131 Forest Ave has created a declining ecosystem and environment for trees, resulting in the death of at least seven Hickories and the injury of others present at the site" and "significant grade changes" at the dumping site. Mr. Roach also notes the root systems of the trees having been buried by the fill with the presence of concrete are having a significant negative impact on tree health. According to Mr. Roach, this resulted in numerous trees and saplings dying and/or in a declining state, including several mature Hickory and Ashe trees. As to the cost of restoration, Mr. Roach estimates upon removal of the contaminated fill, the cost to replace the dead trees and care for the trees made sick from the dumping to be approximately $137,000. At trial, the Village intends to offer the testimony of an engineer from Barton & LoGiudice, who calculates the cost to remove and properly dispose of the 1,700 cubic yards of construction debris is $303,450, and the cost to stabilize the improper slope is approximately $483,000.
Defendants' reply
In reply, the Board of Managers reminds the Court the Village's opposition to this application for an advance ruling on the proper measure of damages is premised on the assumption of a finding of liability on the trespass and nuisance claims, which has not yet happened and for which the Village still bears the burden of proof at the upcoming trial. Defendant further contends the Village has distorted the record by characterizing the fill as toxic despite there being no evidence to support this assertion. Defendant also argues the Court cannot exclude the diminution of value standard where, as here, the cost of restoration is unreasonable. Lastly, Defendant argues the Village's attack on the appraisal is premature and should be addressed at trial.
In reply to the Village's opposition, the Gallay Defendants additionally argue no remediation attempt has been made for this remote parcel, and that there is no evidence of erosion on the property in the ten years that have elapsed since the acts complained of in this action. In distinction from the cases cited by the Village in its opposition, the Gallay Defendants further contend no forest was lost nor any flora destroyed on this property.
 Analysis
Under New York law, in instances of trespass or nuisance where the defendant is alleged to have damaged real property, there are two alternative measures of damage. New York's Pattern Jury Instructions state:
[the] proper measure of damages for injury to real property is the lesser of the decline in market value and the cost of restoration. Otherwise expressed, the measure of damages is [*3]generally the diminution in value, but if the cost of restoring the property to its former condition is less than the diminution in value, the measure of damages is the cost of restoration. The burden is on the defendant to prove that a lesser amount than that claimed by plaintiff provides sufficient compensation for the loss.
See NY PATTERN JURY INSTR.-CIVIL 3:8; see also, Benavie v. Baker, 72 AD2d 541 (2d Dept. 1979) 
The Restatement (Second) of Torts recognizes reasons to depart from the alternative measure of damages rule (lesser of cost of restoration or diminution in value of property). Section 929 of the Restatement (Second) of Torts provides:
[T]he reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery. Thus, if a ditch is wrongfully dug upon the land of another, the other normally is entitled to damages measured by the expense of filling the ditch, if he wishes it filled. If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm. This would be true, for example, if in trying the effect of explosives, a person were to create large pits on the comparatively worthless land of another.
On the other hand, if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, when a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by defendant's invasion. (Emphasis added.)
The purpose of awarding damages in a tort action is to make the plaintiff whole. See, WFE Ventures, Inc. v. GBD Lake Placid LLC, 197 AD3d 834, 835 (3d Dept. 2021) The intent of these alternative measure of damages statutes and case law is to ensure a plaintiff receives no more than is reasonably necessary to fully remedy the damage to real property while avoiding unreasonable and uneconomical remedies". See, Fisher v. Qualico Contracting Corp., 98 NY2d 534, 538 (2002). New York Courts have recognized departures from the alternative measure of damages, awarding a homeowner the cost of restoration even though the defendant demonstrated the diminution in value was lower. See, Davies v Jagger, 232 NY 626 (1922), aff'g 197 A.D. 196 (1921); see also, Benavie v. Baker, supra. As cited by the parties in their respective submissions, there is a long line of trespass and nuisance cases in New York that apply the alternative measure of damages rule to claims of damage to private property. There is, however, little guidance in New York as to whether the alternative measure of damages rule would apply to trespass or nuisance claims made against public property and the difficulties in determining market value. There is no guidance from New York's Pattern Jury Instructions on public nuisance, which give no instruction on the proper measure of damages only a comment referring the reader to charge for a private nuisance. See NY PATTERN JURY INSTR.-CIVIL 3:17
In support of the motion, Defendants rely only on cases where the damaged properties [*4]are privately owned and the market value is readily determinable. See, Byrdcliffe Music, Inc. v. Craig, 143 AD2d 869 (2d. Dept. 1988)(upholding jury determination to award the lesser alternative damage award of no recovery for plaintiff homeowner's diminution of value claim where neighbor removed and topped several of their trees to improve their river view); See also, Island Realty Assoc., LLC v. Motta, 21 Misc 3d 554, (Sup. Ct. Richmond Cty. 2008) (nominal damages awarded for diminution of value, rather than claim for $180,000 for restoration to original condition where defendant established privately owned land's projected value, once developed, was significantly increased).
Even the Village's opposition Memorandum of Law relies on New York cases involving damage to privately owned properties. See, Taylor v. Leardi, 120 AD2d 727 (2d Dept. 1986) (upholding award for cost of restoration despite costs exceeding diminution of value for damage to private residence due to defendant's blasting and mining on adjoining property); see also, Granchelli v. Johnson Bldg. Co, 85 AD2d 891 (4th Dept. 1982) (plaintiff awarded cost of restoration for improper use and damage to its commercial warehouse rather than diminution of value.)
Based upon the briefing by the parties, and the Court's own extensive research, there appears to be no caselaw in New York applying or discussing the applicability of the alternative measure of damages rule to a trespass or nuisance claim to public property. This question appears to be one of first impression in New York. Accordingly, this Court must look outside of New York for guidance on this question. In its opposition papers, the Village does just that, citing to both federal and state law cases it contends offer guidance to the Court. The Court agrees.
The Eleventh Circuit of Appeals in U.S. v. Sullivan, where the federal government sued its adjoining landowner and contractors for damage cause to its public property, offers guidance and direction to determining damages for trespass and nuisance to public property. See, U.S. v. Sullivan, 1 F3d. 1191 (11th Cir. 1993). The facts in U.S. v Sullivan are remarkably similar to this case, where a private citizen hired a contractor to improve their property by removing trees, but, while doing so, the contractors removed trees from federal land. Analogous to this action, the federal government sued trespassers who brought bulldozers across a property line and destroyed trees on government property. As here, the federal government sued the adjacent property owners and the bulldozer operators they hired. Also as herein, the defendants in U.S. v. Sullivan wanted damages limited to diminution of the property value, where Georgia law, similar to New York, provided an alternative measure of damages rule. U.S. v Sullivan supra., at 1197.
The Eleventh Circuit, applying Georgia law, affirmed the reasoning of the trial court that, because the parkland was unique and had no value, the proper measure of damages is the cost of restoration:
The district court reasoned that the parcel of government shoreline at issue here is not simply an isolated piece of property with timber on it, but instead is part of an environmental system. It is not available for sale, nor is it likely to be sold in the future . . . . The value of the forest in the ecological scheme of things far exceeds the market value of the fallen timber. One cannot put a market value on the loss of a thirty-year-old forest. A more accurate, and more logical measure, is the cost to restore the land, as near as possible, to its original condition.
U.S. v Sullivan supra., at p. 1195-1196.
There is also guidance, as the Village notes, in New York's condemnation cases as to the difficulties in trying to use market value as a measure of damage to public properties. In U.S. v Certain Property in Borough of Manhattan, City, County and State of New York, the Second Circuit reversed the lower court's use of market value to determine the compensation due to the City of New York for the United States' condemnation of certain public baths and recreation buildings in the Chelsea area of lower Manhattan for use by the United States Postal Service. See, U.S. v Certain Property in Borough of Manhattan, City, County and State of New York, 403 F.2d 800 (2d Cir. 1968). In rejecting market value over the cost of the facilities substitution, the Court explained the challenges of applying fair market value to private properties as compared to public properties. In regard to private properties, the court explained, "[t]he standard of fair market value - particularly with private condemnees - has proven practical and effective. Its variations are adaptable to many common situations: the comparable sales approach when the tract is one in an active commercial market; the capitalization of earnings standard for income-producing property, and the reproduction cost minus depreciation measure of compensation if the building is a rarely traded specialty." 403 F.2d at 802. Conversely, regarding public properties, the Court stated that "frequently when public facilities are appropriated, the market value test is unworkable because these facilities are not commonly bought and sold in the open market, and seldom are operated for profit." Id. (citation omitted). See, also Port Authority Trans-Hudson v. Hudson & Manhattan Corp., 27 AD2d 32, 44 (1st Dept. 1966) (court in condemnation proceeding applied substitute facility doctrine over market value since there was no ready market, or any market for subject property, precluding use of market value).
Defendants' request to apply the alternative measure of damages rule here faces similar challenges to establishing a market value to compare. This is readily apparent in the report of Defendants' own expert submitted in support of the motion, as the expert acknowledges that two of the three standards of measure for market value are not applicable to the parkland at issue in this action. Defendants' expert opines, the "cost approach" and the "income approach" are not applicable to the property. (See, NYSCEF Doc. No 300 p. 65-66). The only measure offered by Defendants' expert is the "Sales Comparison Approach" which he opines is available through market data. Without making an ultimate determination as to the reliability of Defendants' expert report, for purposes of this motion the Court notes none of the comparisons offered by the expert are of similar parkland owned by a municipality. Instead, all the comparisons are of privately owned vacant land that the expert opines are available for development for residential purposes. The Court can reasonably assume there were no public parkland comparisons available for the expert to compare for sale in the open market, which underscores the above cited caselaw holding market value is not an available measure of damages to public property.
Accordingly, should the Village establish liability against any Defendants under their claims of nuisance or trespass, the Court will not consider diminution of market value as a measure of damages, and will instead consider evidence of the cost to restore the parkland to its original condition prior to any established acts of nuisance and trespass.
Defendants' contentions as to Plaintiff's lack of evidence to show the fill material is composed of "toxic waste" is of no moment to this motion as this Court is being asked to determine the proper measure of damages should liability be found, not the sufficiency of the evidence or determining liability.
Defendants' motion further seeks advance determination as to the standard of proof required from the Village before an award of punitive damages can be made. Defendants [*5]contend the Village failed to produce evidence to support the "very high bar" required for the Court to award punitive damages. Insofar as there has not yet been any testimony, the credibility of which remains to be evaluated by the Court at trial, such a determination is premature. The Court will hear testimony and examine all the admissible evidence presented at trial before ruling whether an award of punitive damages may be warranted. According, this aspect of the motion is denied without prejudice.
Accordingly, it is hereby
ORDERED that the motion by Defendant Board of Managers of 131 Forest Avenue Condominium and joined by Defendants Omri Gallay and Gallay, Inc. (Mot. Seq. #8) is decided in accordance with the foregoing, and it is hereby
ORDERED that counsel for all parties shall appear in person for the previously scheduled pre-trial conference on July 29, 2025 at 2:30 p.m.
The foregoing constitutes the Decision and Order of this Court.
Dated: July 28, 2025
E N T E R
HON. KYLE C. McGOVERN, J.S.C.

Footnotes

Footnote 1:By Stipulation dated June 17, 2025, Plaintiff Town of Monroe discontinued its action against all remaining Defendants (NYSCEF Doc.318).

Footnote 2:In its Decision and Order (NYSCEF Doc. 243), the Court dismissed individually named Defendants Joseph Greenfeld, Judith Greenfeld, Joel Weisenfeld, and John Doe Werczberger from the action.

Footnote 3:Consistent with its restoration remedies, the Village suggests a third option in that the Court could include in the award of damages an Order directing Defendants to undertake the restoration of the parkland to its original condition.